(No. 43125.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROBERT ROY, JR., Appellant.

*Opinion filed May 27, 1971.—Rehearing denied October 4, 1971.*

UNDERWOOD, C.J., dissenting.

GERALD W. GETTY, Public Defender, of Chicago, (SHELVIN SINGER, JAMES J. DOHERTY, Assistant Public Defenders, and KENNETH JONES (Senior Law Student), of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and MICHAEL J. GOLDSTEIN, Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a trial by jury in the circuit court of Cook County, the defendant, Robert Roy, Jr., was convicted of the crime of murder and sentenced to the penitentiary for a term of not less than 16 nor more than 25 years. Since constitutional questions are involved the appeal has been taken directly to this court.

Although the defendant advances several arguments on this appeal, we find one of these arguments dispositive. It is contended that a statement made by the defendant following his arrest was improperly admitted in evidence because he did not understandingly waive the rights to which he was entitled under *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The only evidence at the hearing on the motion to suppress the statement was the testimony of the arresting officers. In substance, the officers testified that they had received a report of a shooting and, upon investigation, obtained a description of the assailant. In a search of the area they found the defendant, who allegedly answered the description of the assailant, and placed him under arrest. According to both officers he was advised, while handcuffed in the squad car on the way back to the scene of the crime, that he had a right to remain silent and a right to a lawyer; that if he could not afford counsel one would be appointed; and anything he said could be and would be held against him. One officer testified that after these warnings the defendant, "kept on saying, 'What?' ", and that defendant would reply, "Yeah." This officer testified that there was a strong odor of alcohol on defendant's

breath, that the defendant was not staggering but that he was swaying a little bit while he was standing there. He also testified that the defendant would stop them every time they went to say something and that the defendant was very confused. In the midst of the officer's testimony in reply to a question of how many times he had to repeat the advisements, the officer said, "I can't tell you how many times we had to * * *." The other officer testified that he advised defendant of his *Miranda* rights. On cross-examination he was asked how the defendant appeared to be at the time of his arrest. The officer replied, "Drunk." Further examination along this line developed that there was a strong odor of alcohol on defendant's breath, that the defendant appeared intoxicated and that he was unsteady. The officer testified that defendant never said that he understood the warnings. At the scene of the shooting one of the officers asked defendant if he shot the deceased and defendant said he didn't shoot him but did hit him with a blackjack. It is this statement which defendant contends was improperly admitted.

The incriminating statement made by the defendant was made after the date of *Miranda* v. *Arizona*, June 13, 1966, and the admissibility of any statements obtained following defendant's arrest is governed by the *Miranda* rules. Even if the statement could be deemed exculpatory, *Miranda* mandates its inadmissibility, unless the requirements of that case were met. (*Miranda* v. *Arizona*, 384 U.S. 436, 477.) The testimony of the arresting officers, which was not rebutted by the defendant, shows that the defendant was advised of his *Miranda* rights. The only question arising here is whether the defendant knowingly waived those rights. In *Miranda* the Supreme Court said: "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to re-

tained or appointed counsel. Escobedo v. State of Illinois, 378 U.S. 478, 490, n. 14, 84 S. Ct. 1758, 1764, 12 L. Ed. 2d 977. This court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), and we reassert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." 384 U.S. at 475, 16 L. Ed. 2d at 724.

When tested by these standards we think it is clear that the State did not sustain its burden of proving that the defendant knowingly and intelligently waived his rights. On the contrary, the testimony of the officers demonstrates that the defendant did not knowingly waive those rights. In this court the State does not make any effort to establish a waiver of the *Miranda* rights. Instead, the State says that this issue is moot because the defendant's statement was "volunteered". While spontaneous, volunteered statements are admissible in the absence of *Miranda* warnings, we cannot agree with the State's characterization of defendant's statement here. It is unrealistic to say that a statement made by a handcuffed defendant to a police officer in a squad car in response to a question as to whether he had shot the deceased is "volunteered". We are of the opinion that the statement of the defendant should not have been admitted in evidence and the cause must therefore be remanded for a new trial.

We need not consider claimed errors regarding the production of a witness's previous statements. The new rules of criminal discovery (Rules 411-415), available on retrial, will govern.

It is also contended that the production of a photograph of the body of the deceased was erroneous. We do not be-

lieve it is necessary to discuss this contention in detail. It is sufficient to say that our review of the record and an examination of the photograph establishes that the picture had probative value and was not unduly inflammatory. See *People v. Speck,* 41 Ill. 2d 177.

The judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. CHIEF JUSTICE UNDERWOOD, dissenting:

I cannot agree that reversal of this conviction is necessary under the circumstances here.

Defendant was arrested not far from, and very shortly after, the shooting as a result of the description given the officers by persons at the scene. The gun with which decedent was killed was found nearby, and a receipt for that gun, together with additional shells, were found on defendant's person. It is clear that he was informed of his constitutional rights before any statement was made. It is, however, considerably less than clear that his statement was made in response to questions as stated in the majority opinion. Both arresting officers, Officer Urban on cross-examination when he said: "No, I didn't. I didn't talk to him at all. He started the conversation by that [the questioned statement]", and Officer Ryan who testified: "I told him his rights [prior to the statement], that was all", denied the statement was in response to a question, although Officer Urban's direct testimony is susceptible of a contrary interpretation.

In addition to the question whether defendant's statement was volunteered (see *People* v. *Bey,* 45 Ill.2d 535), the trial judge was not, in my judgment, necessarily ruling against the manifest weight of the evidence in holding the statement admissible even though defendant was, to some extent, under the influence of liquor. It is apparent that defendant understood what he was suspected of, for both officers testified he denied the shooting. Also, Officer Urban

testified: "I didn't have any trouble in understanding him." It seems to me the trial judge's denial of the motion to suppress the statement necessarily indicates an affirmative resolution of the question of defendant's ability to understand the officers or whether the statement was volunteered. I would interfere on neither ground in the circumstances here and would affirm the judgment.