THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY FRANKLIN, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2360

Opinion filed September 27, 1989.

Randolph N. Stone, Public Defender, of Chicago (Barbara J. McClure, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Daniel J. Lynch, Assistant State's Attorney, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

The defendant, Tony Franklin, was convicted following a bench trial of involuntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—3) for the shooting death of Michael Whitaker. The trial court sentenced the defendant to four years' imprisonment and two years' mandatory supervised release. The defendant contends on appeal that his conviction must be reversed because the shooting was an accident. In the alternative, the defendant requests a new trial, contending that the trial court erred in denying his motion to suppress inculpatory statements he gave to the police and to the assistant State's Attorney on the ground that he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights because he was intoxicated during interrogation. Finally, the defendant argues that the trial court was authorized to impose only one year of mandatory supervised release as in-

voluntary manslaughter is a Class 3 felony.

The trial testimony revealed that on August 10, 1986, the defendant and the victim, Michael Whitaker, had been drinking in celebration of the defendant's birthday at 7514 South Winchester in Chicago. Also present were the defendant's brother and sister, Raffe Franklin and Erline Franklin, the defendant's girl friend, Charlotte Brown, and Carlton Thompson. Everyone present, including the victim, all lived at the same address. The drinking began the previous day at 6 p.m. and lasted until 4 a.m. or 5:30 a.m. that morning. At 9 a.m., Raffe Franklin and Michael Whitaker left to purchase liquor and cigarettes. Upon their return, the party resumed and more alcohol was consumed. The testimony revealed that around 12 p.m. the defendant and his brother began wrestling. Erline Franklin stated that the two brothers were playing, but Carlton Thompson testified that they were actually arguing. After the argument, everyone except the defendant left to go outside. Carlton Thompson slept in a car parked in front of the residence. At some point, the defendant threw a table and a chair through the front door and asked Michael Whitaker to come inside. A few minutes later, Erline heard a shot, whereupon she woke Thompson from his sleep so he could investigate. Thompson went inside and found the defendant in his bedroom sitting on a couch with his head down and a shotgun on a nearby table. Michael Whitaker was on the floor in the opposite corner with a fatal gunshot wound in the head.

The defendant did not testify at trial. However, the testimony from the motion to suppress hearing was stipulated to and incorporated into the trial record. That testimony revealed that when the police arrived, the defendant told them he had shot the victim in his bedroom. The police smelled alcohol on Franklin's breath, and they could tell he had been drinking. Franklin related that he had been sitting on a couch in his bedroom when Whitaker entered and an argument ensued. The defendant told police that Whitaker "came at him" and so he picked up a gun which had been lying on his bed. As he stood up, he stumbled and fell backwards, causing the shotgun to discharge, striking and killing Michael Whitaker. The police read Franklin his *Miranda* rights, and Franklin answered in the affirmative when asked if he understood those rights. After being advised of his rights, Franklin agreed to talk and repeated his story. When asked for the location of the gun, the defendant informed the police that he had thrown the weapon on the el tracks near his home because he had panicked. After the defendant was handcuffed behind his back, he led police to the area where he stated he threw the gun. A search of the area failed to produce the weapon; however, the police later discov-

ered that the gun had been disassembled and hidden at the home of Carlton Thompson's mother.

Detective Krippel interrogated Franklin at approximately 3:30 p.m. at the station. An assistant State's Attorney again questioned Franklin at 4:30 p.m. On both occasions, Franklin was advised of his *Miranda* rights and indicated he understood those rights. The detective testified that the defendant had initially described a version of events different from that given to the arresting officers. According to Detective Krippel, Franklin stated that he heard noises in the house and someone "shuffling." Franklin retrieved his shotgun from his bed and the gun accidentally discharged, striking a person in the next room. When Detective Krippel asked for more details, Franklin changed his story, giving an account similar to the one he gave to the arresting officers. The detective stated that he could smell alcohol on the defendant's breath, but that the defendant was responsive to his questions and his answers were intelligible. Detective Krippel was also present when the assistant State's Attorney questioned Franklin.

The assistant State's Attorney testified that the defendant had told him that the argument involved two other individuals and not Whitaker, but that something was said between Whitaker and the defendant when Whitaker entered the defendant's room. The assistant State's Attorney testified that the defendant was responsive to his questions and detailed in his description of the crime scene and the shooting. The assistant State's Attorney terminated the interview but indicated to Krippel that he intended to return the following day to reinterview the defendant. Krippel testified that the assistant State's Attorney discontinued interviewing the defendant and the witnesses because everyone had been drinking and the attorney wanted them to remember the facts as they occurred. The assistant State's Attorney, however, denied making that statement to Krippel. The assistant State's Attorney returned the following day, but the defendant produced a piece of paper with a phone number and requested to speak to a public defender before making any statements.

The assistant State's Attorney dialed the number and talked to a public defender. Thereafter, Franklin spoke to the public defender and invoked his right to remain silent. There was conflicting testimony as to what was said between the assistant State's Attorney and the public defender. The public defender testified that the assistant State's Attorney told him he needed to reinterview the defendant because he did not think that Franklin's statement from the day before would hold up in court. The assistant State's Attorney denied making any such statement.

On appeal, the defendant maintains that the act of picking up the shotgun was a lawful act in self-defense and that the shooting was an accidental outgrowth of that lawful act. The defendant argues that the shooting was an accident because the alcohol in his system caused him to stumble, which in turn caused the shotgun to discharge. Therefore, the defendant asserts that the necessary element of recklessness for involuntary manslaughter is absent as the shooting was caused by an involuntary act. The State contends, however, that the trial court correctly found that the mere handling of the weapon in his intoxicated state was reckless.

■ Section 9—3 of the Criminal Code of 1961 provides:

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***." (Ill. Rev. Stat. 1985, ch. 38, par. 9—3.)

The Criminal Code defines "recklessness" as follows:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1985, ch. 38, par. 4—6.)

An accident is not to be equated with recklessness, and an accidental discharge of a gun will not support a conviction for involuntary manslaughter. (*People v. Spani* (1977), 46 Ill. App. 3d 777, 780, 361 N.E.2d 377.) The determination of whether a killing has resulted from an accident or reckless conduct, however, is a question for the trier of fact. (*People v. Schwartz* (1978), 64 Ill. App. 3d 989, 993, 382 N.E.2d 59.) That determination will not be disturbed unless it is palpably contrary to the weight of the evidence. *People v. Post* (1968), 39 Ill. 2d 101, 105, 233 N.E.2d 565.

In contending that his conviction must be reversed, the defendant relies principally upon *People v. Post* (1968), 39 Ill. 2d 101, 233 N.E.2d 565. In *Post,* a husband and wife observed a stranger climb over a fence and enter their property under the cover of darkness. The husband chased the intruder away and fired a gun into the ground so that the intruder would never return. The bullet ricocheted and struck the intruder as he fled. The supreme court reversed the husband's involuntary manslaughter conviction, holding that firing

into the ground or in the air to frighten away a "marauder" is not a reckless act. (*Post*, 39 Ill. 2d at 105.) The facts in *Post*, however, are clearly distinguishable from the instant case.

■ Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 7—1) provides that one may use "force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself" with the limitation that "force which is intended or likely to cause death or great bodily harm" may be used "only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself." The record here, however, reveals that Whitaker was not armed. There was also testimony that Franklin and Whitaker were friends and that they had never been known to quarrel. Also important is the fact that Whitaker, who had been living in the Franklin household for two to three years, had been dating Franklin's sister for three years and had planned on marrying her. On these facts, the trial judge, as trier of fact, could have reasonably concluded that Franklin was not threatened by the victim in a manner justifying his use of a gun. The trial judge could have reasonably found that the element of "reasonableness" that must have characterized the defendant's state of mind in believing that it was necessary to arm himself was absent.

■ It has been previously held that handling a gun while intoxicated is reckless conduct. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 526, 281 N.E.2d 389.) The defendant's additional contention, that the firing of the weapon was accidental because there was no voluntary act involved, has previously been rejected. In *People v. Andersch* (1982), 107 Ill. App. 3d 810, 818, 438 N.E.2d 482, a defendant argued that a discharge of a weapon was accidental because it was caused by an "unconscious" act. The court replied that the defendant's argument "confuses reckless conduct with the risks or results that are the natural products of such acts." (*Andersch*, 107 Ill. App. 3d at 818.) Here, too, the defendant confuses that which we call conduct with that which we call the risks and results associated with such conduct. Handling a loaded gun while intoxicated was reckless. Tripping or stumbling while handling the gun and the subsequent discharge were risks the defendant took, and Whitaker's death was the end result. Accordingly, we hold that the trial judge's finding that Whitaker's death was the result of reckless conduct by the defendant was not palpably contrary to the weight of the evidence.

■ The defendant next contends that a new trial is required because the trial court erred in denying his motion to suppress inculpa-

tory statements made to the police and to an assistant State's Attorney while in an intoxicated condition. The law is well settled that where a suspect is so grossly intoxicated that he no longer has the capacity to waive his rights, any statements made while in such condition will be suppressed. (*People v. Andersen* (1985), 134 Ill. App. 3d 80, 95, 479 N.E.2d 1164; *In re Shutters* (1977), 56 Ill. App. 3d 184, 188, 370 N.E.2d 1225.) However, the fact that the accused is under the influence of alcohol does not automatically render any statements that are made inadmissible at trial. (*Andersen*, 134 Ill. App. 3d at 95.) Unless the evidence of a defendant's intoxicated condition clearly demonstrates that he lacked the capacity to waive his rights, any inculpatory statements made are admissible, and the evidence of the defendant's intoxicated condition will go only to the weight of his confession. (*Andersen*, 134 Ill. App. 3d at 95.) The determination as to whether a defendant has knowingly and intelligently waived his rights depends upon the particular facts and circumstances of each case, and the trial court's decision will not be overturned unless it is against the manifest weight of the evidence. (*People v. Markiewicz* (1976), 38 Ill. App. 3d 495, 498, 348 N.E.2d 240.) The State carries the burden of proving by a preponderance of the evidence that the defendant has knowingly and intelligently waived his rights. *People v. Lester* (1981), 102 Ill. App. 3d 761, 765, 766, 430 N.E.2d 358.

The defendant argues that the circumstances surrounding his confession parallel those found in *People v. Roy* (1971), 49 Ill. 2d 113, 273 N.E.2d 363. In *Roy*, the supreme court held that a defendant did not knowingly and intelligently waive his rights where an incriminating statement was made while intoxicated. (*Roy*, 49 Ill. 2d at 116.) The testimony at Roy's suppression hearing revealed that he was in a state of confusion and that he swayed while standing. The arresting officers testified that they smelled a strong odor of alcohol on Roy's breath. Further testimony revealed that Roy continually answered "What?" and "Yeah" in response to recitation of his *Miranda* rights by the arresting officers while en route to the station. One of the arresting officers testified that Roy appeared drunk and that he never indicated that he understood the warnings.

■ A review of the record now before us, however, demonstrates that the defendant's argument is not supported by the facts. The testimony at Franklin's suppression hearing also revealed that he had an odor of alcohol on his breath. However, Officer Cullinan characterized the odor as weak or mild. Officer Kaufmann testified that he was able to understand Franklin's speech and that he only smelled alcohol on defendant's breath when he moved in closer to search the defendant

and the defendant opened his mouth to speak. Officer Kaufmann also stated that he was present when Franklin led police to the area where Franklin said he threw his gun. He stated that Franklin was able to walk without assistance while handcuffed behind his back and never stumbled. Officer Cullinan also testified that he observed the defendant walk without assistance while handcuffed behind his back as other officers took him to search for the gun. The assistant State's Attorney also testified that he was able to understand Franklin's speech. Based on this review of the record, the court finds that the trial court's decision to deny the defendant's motion to suppress was not against the manifest weight of the evidence. Accordingly, we affirm the defendant's conviction.

■■ The defendant requests this court to reverse and remand for resentencing because the trial judge erroneously imposed a two year mandatory supervised release following his prison term. The State agrees that the length of the supervised release is not authorized as involuntary manslaughter is a Class 3 felony (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(1)), and only one year of supervised release can be imposed (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(d)). The State recommends that the court reduce the supervised release to one year without remand pursuant to Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)). We agree that the appropriate relief is to reduce the defendant's mandatory supervised release to one year rather than remand for resentencing. The defendant's mandatory supervised release is hereby reduced to one year.

The judgment of the circuit court is affirmed.

Judgment affirmed.

FREEMAN, P.J., and RIZZI, J., concur.