THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH R. LEMKE, Defendant-Appellant.

Fifth District   No. 5—02—0531

Opinion filed April 20, 2004.—Rehearing denied June 22, 2004.

Daniel M. Kirwan and Lawrence J. O'Neill, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Brian T. Shinkle, State's Attorney, of Albion (Norbert J. Goetten, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a bench trial in the circuit court of Edwards County, the defendant, Kenneth R. Lemke, was found guilty of first-degree murder (720 ILCS 5/9—1(a)(2) (West 2000)). On appeal, the defendant raises the issue of whether his trial counsel's failure to present the defense that the defendant had committed the lesser offense of involuntary manslaughter constituted the ineffective assistance of counsel. We reverse and remand for a new trial.

## FACTS

The defendant was charged with two counts of first-degree murder and one count of domestic battery arising from the shooting death of his stepson, Lance Albertson. The matter proceeded to a bench trial.

The defendant testified in his own defense. The defendant testified that he had been married to Albertson's mother for eight years until their divorce in 1988. After the divorce, he remained close with Albertson. Occasionally, Albertson would come to the defendant's property to ride four-wheelers and play ball. On the date of the incident, Albertson and a friend, Rusty Heindselman, stopped by the defendant's property and borrowed a four-wheeler in order to go deer hunting. While the others were gone, the defendant cooked some food and drank some beer. Upon Albertson and Heindselman's return, the defendant served them some food and then left for a bar in Grayville, drinking on the way. The defendant testified that he had "quite a few" beers before he left and also picked up some beer at a Huck's store on his way to Grayville. At the bar, the defendant drank Jack Daniels and Coke and met with his girlfriend.

When the defendant returned home, Albertson and Heindselman were still there. After awhile, Albertson left the house. The defendant thought Albertson was upset about a girl. The defendant then heard what he believed was Albertson banging things around in the barn. The defendant went outside and told Albertson to settle down. According to the defendant, Albertson "got real violent" and started kicking on an old vehicle that the defendant kept covered up. The defendant told Albertson that he could not act like that and to settle down. Albertson then went wild and asked the defendant, "Do you want a piece of me?" The defendant and Albertson wrestled. Albertson took away a walking stick that the defendant had been carrying, and the defendant crawled away. The defendant then yelled for Albertson to leave.

The defendant went back into his house. The defendant testified that at that time, he did not know what to do because Albertson appeared "just out of it." The defendant got a pistol, went back outside, told Albertson that he had a gun, and told him to leave. Albertson yelled something unidentifiable back. Albertson stood on the seat of the four-wheeler and yelled something about the walking stick that he was still holding. The defendant testified that he then felt a sharp pain in his hip and started to fall backwards and heard a blasting sound above his head.

The defendant testified that at that time, he did not realize how the gun had fired. The defendant had not cocked the gun. The defendant saw Albertson fall down. The defendant went to check on Albertson and did not get a response. The defendant called an operator for assistance and tried cardiopulmonary resuscitation, to no avail. The defendant testified that the gun had not been cocked and he had not aimed it at Albertson. The defendant stated that he had not come

out of the house with the intent to shoot Albertson and had not wanted to shoot him.

The defendant testified that he had suffered numerous injuries from 20 years' working in the construction industry. The defendant stated he has a pinched nerve in his hip and suffers from carpal tunnel syndrome.

In addition to other witnesses, the defendant presented testimony from his personal physician of the previous 20 years, Dr. Timothy Garrett. Dr. Garrett testified that he had treated the defendant for back pain, a sciatic nerve in the hip, and carpal tunnel syndrome. The defendant had reported numbness and tingling in his fingers due to the carpal tunnel syndrome. He also had spasms in his hip that could cause him to buckle and lose balance while walking.

Detective Richard Simer, an expert in the functioning of a firearm, from the City of Centralia police department, testified that he had examined the .22-caliber Colt Peacemaker revolver that had been involved in the incident. Simer also described the fanning and cocking measures of firing a shot. According to Simer, his examination revealed that the trigger pull was very slight and hardly required any pressure at all to pull the trigger back if the hammer was not cocked. He testified that this model of handgun was developed in the late nineteenth century and is famous as the gun used by cowboys in the Old West. Simer testified that it was possible on some occasions to strike the hammer and for the gun to go off by accident. According to Simer, when the firearm was first developed, the recommended procedure for carrying the firearm was to always carry it on an empty cylinder, even when it was placed in a holster. The reasoning behind this recommendation was that if someone fell off his horse or otherwise fell down, the firearm would not fire because there would be no cartridge under the hammer.

The State also presented several witnesses. County coroner Mark Curtis testified that he participated in the autopsy on Albertson. Curtis testified that one shell had been fired and several shells remained in the handgun from which Albertson was shot. He stated that it appeared that the bullet which had struck Albertson was going upward at impact. According to a toxicology report, Albertson had methamphetamine, amphetamine, ephedrine, and pseudoephedrine in his blood.

Michael Cooper, a forensic scientist for the Illinois State Police, testified that he had examined the firearm that had been used in the incident. Cooper stated that it was a single-action revolver, which, in contrast to double-action revolvers, requires a person to bring the hammer back or cock the gun prior to shooting. Cooper described two

methods for firing a shot: cocking and fanning. He stated that in cocking, the shooter sets the cock by bringing the hammer back and then fires by pulling the trigger and that in fanning, the shooter holds the trigger down and pulls the hammer back and then releases it, as shown in movies about the Old West.

The 9-1-1 call from the defendant after the incident was played. In the recording, the defendant states, "[Albertson] jerked the gun out of my hand."

Rusty Heindselman testified that when the defendant returned home from Grayville, the defendant immediately got into an argument with Albertson. According to Heindselman, both the defendant and Albertson were in bad moods. He stated that Albertson was outside and the defendant went outside to check what was wrong with Albertson. The defendant returned in a few minutes, apparently after getting into an argument, and stated, "He is not going to talk to me that way," and picked up a walking stick before returning outside to talk to Albertson. When Heindselman went outside to see what was going on, he observed the defendant and Albertson on the ground wrestling near the barn door. Albertson apparently won the match and took the walking stick away from the defendant. Albertson walked away and the defendant went back inside. The defendant then came back outside carrying a handgun. Heindselman asked the defendant what he was doing and the defendant replied, "It's cocked and it's ready." Heindselman heard a gunshot and saw Albertson fall. Heindselman testified that the defendant told him several times the shooting was an accident.

The court found the defendant guilty of one count of first-degree murder. At the conclusion of the trial, the court stated:

"The defendant left his house by way of the back door. The defendant walked towards [Albertson,] who was at the four-wheeler. More words were exchanged. The defendant, in his statement to Agent Harms, stated that [Albertson] said, 'I'm going to leave.' The gun was cocked and in the air pointed in the direction of [Albertson]. The defendant announced, 'I've got a gun and it's loaded.' [Heindselman] says the defendant said, ['I]t's cocked and loaded[']] or [']ready.['] The defendant's finger was on the trigger. The defendant knew not to put his finger on the trigger until it was ready to shoot. The gun was fired, and [Albertson] was shot. [Albertson] died from the gunshot. [Albertson] was defenseless, and this time could not walk away.

The defendant's testimony at trial is not consistent with prior statements made on the 9-1-1 tape and statements to the police. The defendant had to know his acts created a strong probability of death or great bodily harm by brandishing a loaded and cocked

firearm with his finger on the trigger[ ] and firing the same in the direction of Lance Albertson. With the strong probability of death, he knowingly acted regardless of the consequences."

The defendant filed this appeal.

## ANALYSIS

■ The defendant contends that the evidence did not support a conviction for first-degree murder. Instead, the defendant contends that he was guilty of the offense of involuntary manslaughter. These two offenses are distinguished by the required mental state. First-degree murder requires the intent to kill or do great bodily harm or knowledge that the actions would cause death or create a strong probability of death or great bodily harm. 720 ILCS 5/9—1(a) (West 2000). In contrast, involuntary manslaughter only requires a person to recklessly perform an act that is likely to cause death or great bodily harm to some individual. 720 ILCS 5/9—3(a) (West 2000). Involuntary manslaughter may be an unintentional killing, and the only mental state required is the conscious disregard of a substantial and unjustifiable risk. 720 ILCS 5/9—3(a) (West 2000); *People v. Hoover*, 250 Ill. App. 3d 338, 351, 620 N.E.2d 1152, 1161 (1993).

■ The Criminal Code of 1961 defines recklessness:

"Recklessness. A person is reckless or acts recklessly[ ] when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense[,] and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." 720 ILCS 5/4—6 (West 2002).

■ Pointing a gun at someone is a reckless act that may support a conviction for involuntary manslaughter. The defendant cites to several cases in which a person was found guilty of involuntary manslaughter based upon the reckless conduct of pointing a firearm at someone. See *Hoover*, 250 Ill. App. 3d at 351, 620 N.E.2d at 1162; *People v. Franklin*, 189 Ill. App. 3d 425, 430, 545 N.E.2d 346, 350 (1989); *People v. Andersch*, 107 Ill. App. 3d 810, 818, 438 N.E.2d 482, 488 (1982); *People v. Schwartz*, 64 Ill. App. 3d 989, 994, 382 N.E.2d 59, 64 (1978). It is considered settled law in Illinois that pointing a loaded firearm at another person constitutes recklessness because that conduct is a gross deviation from the standard of care exercised by a reasonable person. *Andersch*, 107 Ill. App. 3d at 818, 438 N.E.2d at 488.

A review of the cases presented by the defendant shows that the

defendant's actions fit within a pattern in which a person with a weapon confronts another and the weapon discharges. A primary example is *People v. Hoover*, 250 Ill. App. 3d 338, 350, 620 N.E.2d 1152, 1161 (1993). In *Hoover*, the defendant testified that the victim had been stalking her because the defendant was involved in a dalliance with the victim's husband. *Hoover*, 250 Ill. App. 3d at 344-45, 620, N.E.2d at 1158. On the morning of the incident, the victim telephoned the defendant asking about the man in question. A few minutes after hanging up on the victim, the defendant heard the victim honking a car horn out in the street. The defendant placed a handgun in the pocket of her jacket and went outside to confront the victim. *Hoover*, 250 Ill. App. 3d at 345-46, 620 N.E.2d at 1158. The defendant saw the victim sitting in a car. As the defendant was talking, the victim rolled down her window and stated that she was not going to leave until her husband came to see her. Words were exchanged and the victim reached out the window, grabbed the defendant with both hands, and pulled the defendant into the car. *Hoover*, 250 Ill. App. 3d at 346, 620 N.E.2d at 1158. A struggle ensued and the defendant tried to break loose. During the fight, the defendant placed the gun in her right hand and the gun went off. The trial court found the defendant guilty of involuntary manslaughter.

On review the appellate court rejected the argument that the incident was an accident. The fact the weapon was not fired voluntarily did not mean the defendant was not reckless. The court began its analysis by noting that an accident is not the same as recklessness, in that an accidental discharge of a firearm does not by itself support a conviction for involuntary manslaughter. *Hoover*, 250 Ill. App. 3d at 351, 620 N.E.2d at 1161, citing *Franklin*, 189 Ill. App. 3d at 429, 545 N.E.2d at 349. The court then stated that the determination of whether an incident was an accident or the result of reckless conduct is a matter to be determined by the trier of fact. *Hoover*, 250 Ill. App. 3d at 351, 620 N.E.2d at 1161, citing *Schwartz*, 64 Ill. App. 3d at 993, 382 N.E.2d at 63:

> "This court has held that pointing a loaded gun at another constitutes recklessness because it is a gross deviation from the standard of care which a reasonable person would exercise. [Citation.] Further, *defendant's contention that the firing of the weapon was accidental because she did not fire it voluntarily has been previously rejected by this court*. [Citation.] It is clear that defendant's acts of taking a loaded gun out to [the victim's] car to confront her, then grabbing [the victim's] hair and placing the gun at the back of [the victim's] head during the struggle, were reckless conduct. As such, defendant was proved guilty of involuntary manslaughter

beyond a reasonable doubt." (Emphasis added.) *Hoover*, 250 Ill. App. 3d at 351, 620 N.E.2d at 1161-62.

In this case, the condition of the defendant and the handgun could also be seen as supporting a conviction for involuntary manslaughter. See *Franklin*, 189 Ill. App. 3d at 430, 545 N.E.2d at 350 (handling a gun while intoxicated is reckless conduct); *Andersch*, 107 Ill. App. 3d at 818, 438 N.E.2d at 488 (the defendant acted recklessly in not checking the condition of the weapon prior to the incident).

The State contends that it was neither impossible nor unreasonable for the trial court to find the defendant guilty of murder. The State contends the fact that the single-action revolver used by the defendant required two separate movements for firing actually supports a finding that the firing of the gun was intentional. It also argues that a fact finder could have found that the shooting was the defendant's attempt to put an end to an escalating conflict. In addition, the State questions the defendant's assertion that he was intoxicated at the time of the shooting and otherwise calls into doubt his credibility. The State contends that from the evidence presented, a fact finder could determine that the defendant intended to shoot Albertson. See *People v. Rodriguez*, 275 Ill. App. 3d 274, 284, 655 N.E.2d 1022, 1029 (1995). On appeal, we will not substitute our judgment for that of a trier of fact in cases where the facts could lead to either of two inferences, unless the inference accepted by the fact finder is inherently impossible or unreasonable. *People v. Tharpe-Williams*, 286 Ill. App. 3d 605, 611, 676 N.E.2d 717, 721 (1997). The countervailing evidence in the record leaves open a reasonable possibility that the fact finder could find that the defendant intentionally killed Albertson. Thus, we do not mandate that the defendant's conviction for first-degree murder be replaced with a conviction for involuntary manslaughter.

Nonetheless, we do find that the defendant was denied the effective assistance of counsel. In order to have a conviction set aside for the ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). The competence of trial counsel is to be determined by the totality of the counsel's conduct. *People v. Morris*, 335 Ill. App. 3d 70, 78, 779 N.E.2d 504, 510 (2002). The effective assistance of counsel refers to competent, not perfect, representation. *People v. Odle*, 151 Ill. 2d 168, 173, 601 N.E.2d 732, 734 (1992). Prejudice is established when there is a reasonable probability that, but for counsel's unprofessional er-

rors, the result of the proceeding would have been different. *People v. Cloutier*, 178 Ill. 2d 141, 163, 687 N.E.2d 930, 940 (1997). " 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984), quoting *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.

The State contends that defense counsel's action was a matter of trial strategy and that trial counsel adopted an "all-or-nothing" approach. By not presenting the possibility of a conviction for involuntary manslaughter, defense counsel placed the trial court in the position of either finding the defendant guilty of murder or finding the defendant not guilty because the shooting was an accident. By presenting the possibility of a conviction for involuntary manslaughter, defense counsel would have ensured a felony conviction. Not presenting a lesser-included offense has been found to be a valid strategy when it exposes a defendant to a compromise verdict. See *People v. Barnard*, 104 Ill. 2d 218, 231-32, 470 N.E.2d 1005, 1009-10 (1984).

A strong presumption exists that trial counsel's conduct, if it involves strategy, falls within reasonable, professional judgment. *People v. Cunningham*, 191 Ill. App. 3d 332, 337, 547 N.E.2d 765, 769 (1989). As a result, reviews of the competency of counsel usually do not extend to the exercise of the counsel's judgment, discretion, or trial tactics. *People v. Spicer*, 158 Ill. App. 3d 699, 704, 511 N.E.2d 235, 239 (1987). However, when a choice of trial strategy is based upon a misapprehension of the law, the claim is reviewable and counsel may, in fact, have been ineffective. *Cunningham*, 191 Ill. App. 3d at 337, 547 N.E.2d at 769; *People v. Wright*, 111 Ill. 2d 18, 27, 488 N.E.2d 973, 977 (1986).

Given the defendant's testimony, the adoption of an all-or-nothing approach could only have been based on a misapprehension of the law. The evidence presented by the defendant could not have supported a finding of not guilty due to the shooting being an accident. The defendant's apparent theory was that the shooting occurred as a result of an unconscious act of the defendant while he was holding the handgun. An unconscious act of shooting would not have supported a determination of innocence, given the context illustrated by the rest of the defendant's testimony.

The accidental discharge of a weapon by itself does not constitute recklessness. *Hoover*, 250 Ill. App. 3d at 351, 620 N.E.2d at 1161. In situations where the handling of a firearm is not otherwise reckless, whether the discharge of the weapon creates the requisite intent has been seen as a question of fact for the trier of fact. *Hoover*, 250 Ill.

App. 3d at 351, 620 N.E.2d at 1161; *Franklin*, 189 Ill. App. 3d at 429, 545 N.E.2d at 349. Such is not the scenario in this case. The assertion that the unconscious act of firing the weapon precludes guilt "confuses reckless conduct with the risks or results that are the natural products of such acts." *Andersch*, 107 Ill. App. 3d at 818, 438 N.E.2d at 488.

In this case, the defendant's recklessness does not stem from his unsafe operation of the handgun but from his possession and directing of the weapon given the situation as he described it. The defendant testified that he had been in a series of altercations with Albertson. By his own testimony, the defendant took the weapon outside as a part of an ongoing dispute. As in *Hoover*, the defendant's possession of the weapon in the situation as he described it was, at least, reckless. No reasonable trier of fact could have found that the defendant possessed a less-culpable state of mind. The defendant's pointing of a handgun in the direction of Albertson during an altercation cannot be seen as an accident.

This case is similar to *Wright*. In *Wright*, on a petition for postconviction relief, the circuit court vacated judgments on murder counts and entered a judgment for involuntary manslaughter. At the trial, the defense theory was that the shooting had been accidental and that the defendant, therefore, had lacked the required intent for murder. *Wright*, 111 Ill. 2d at 22, 488 N.E.2d at 975. The defendant testified that she had been sleeping upstairs when she was awakened from an alcohol-induced sleep by noise in her kitchen. The defendant testified that on the date of the incident, she had told a male friend of her daughter's to leave her house when she heard him swear at her daughter. Upon being awakened, the defendant walked with a gun to the top of the stairs in order to see who was downstairs. The defendant claimed that she had not remembered that her daughter was in the house. The defendant then saw her daughter, and her daughter asked the defendant why she had a gun. The defendant testified that she had replied that it was her gun and that she would fire it when it pleased her. *Wright*, 111 Ill. 2d at 22, 488 N.E.2d at 975. The gun then discharged, striking the daughter. The defendant testified that she had thought the gun was pointed toward a wall and that she had not intended to fire the weapon or shoot her daughter. The defendant was initially convicted of murder.

At the evidentiary hearing on the defendant's petition for postconviction relief, the defendant's trial counsel testified that he had not raised the defense of voluntary intoxication because his understanding was that the drunkenness would have to be to an extent that the defendant recalled none of the facts of the incident. Additional evidence was presented on the effect of taking medications combined

with alcohol. There was also testimony that the defendant, on another occasion after drinking, had fired a gun into the ceiling to stop a family argument. After a hearing on the petition for postconviction relief, the trial court vacated the judgments on the murder counts and entered a judgment for involuntary manslaughter. *Wright*, 111 Ill. 2d at 24-25, 488 N.E.2d at 976.

The defendant in *Wright* was prejudiced by her counsel's failure to consider involuntary manslaughter. The Illinois Supreme Court upheld the vacating of the murder counts in favor of a judgment for involuntary manslaughter. The court pointed out that trial counsel admitted to a fundamental misunderstanding of the law. Trial counsel erroneously placed exclusive reliance on the extent of the defendant's ability to recall the incident, in considering whether intoxication could be a factor in reducing the charge from murder to involuntary manslaughter. *Wright*, 111 Ill. 2d at 30, 488 N.E.2d at 979. Defense counsel saw the only possible outcomes as an accident or a murder. The court described why counsel was ineffective:

"He considered only the question of the mental state for the crime of murder. He did not consider that the action of the defendant could be regarded as reckless and the possible legal effect of such conduct. He did not examine whether involuntary manslaughter might be the offense involved as the court did after considering the total evidence." *Wright*, 111 Ill. 2d at 30, 488 N.E.2d at 979.

The State's attempt to distinguish *Wright* misapprehends its relevance. The State first contends that the record contains no testimony from the defendant's trial counsel regarding a misunderstanding of the law and the voluntary intoxication defense. Testimony from the defendant's counsel is not necessary. Our review is predicated on the most cogent of defense counsel's reasons for such an approach—an all-or-nothing strategy. This approach, however, is not a viable strategy.

■ ■ It is important to note that this is not a case of invited error. Under the doctrine of invited error, a defendant may not request that his counsel proceed in one manner at the trial and then later contend on appeal that trial counsel acted in error. *People v. Villarreal*, 198 Ill. 2d 209, 227-28, 761 N.E.2d 1175, 1184-85 (2001). There is no indication in the record that the defendant requested that an involuntary manslaughter defense not be presented. Nor is there any indication that the defendant was informed of the lack of a basis for an all-or-nothing approach, by either his counsel or the bench. *Cf. People v. Carter*, 208 Ill. 2d 309, 319, 802 N.E.2d 1185, 1190 (2003).

In addition, the State contends that *Wright* is distinguishable because the record in that case conclusively established that the results

of the proceeding would have been different. This distinction would be valid if we were mandating a finding of involuntary manslaughter. In essence, our decision coincides with the decision in *Wright* to review the postconviction petition. Upon remand, we are giving the trial court an opportunity to determine whether the defendant's conduct was not intentional, but reckless.

In attempting to distinguish *Wright*, the State addresses the question of voluntary intoxication but does not address the question of whether the defendant's conduct could be seen as less than reckless. In the cases cited to by the State distinguishing *Wright*, the evidence did not support a finding of recklessness. See *People v. Smith*, 195 Ill. 2d 179, 196-97, 745 N.E.2d 1194, 1205 (2000) (given the totality of circumstances, where the defendant had been involved in a burglary and had given a police statement stating that " 'he must have intended to kill' " the victim, additional evidence of the ingestion of PCP was irrelevant); *People v. Jaffe*, 145 Ill. App. 3d 840, 862, 493 N.E.2d 600, 616 (1986) (distinguished *Wright* based on the fact that "evidence would not have supported a finding of recklessness").

If the trial court had been presented with the option of finding the defendant's conduct to be reckless, there is a reasonable probability that a different result would have been reached. See *People v. Patterson*, 192 Ill. 2d 93, 122, 735 N.E.2d 616, 633 (2000) ("reasonable probability" is a probability sufficient to undermine confidence in the outcome). There was no reason for not presenting this argument at the trial. Viewing the evidence in the light most favorable to the defendant, a judge could not have found the shooting to be an accident. Upon remand, the trial court is to consider whether the defendant committed involuntary manslaughter.

The defendant also raises issues concerning the lack of counsel at his preliminary hearing. Because the judgment from the initial process is being reversed, we need not address that issue.

## CONCLUSION

Accordingly, the judgment of the circuit court is hereby reversed, and the matter is hereby remanded for a new trial. Because we have concluded that the evidence at the first trial was sufficient to support a conviction for first-degree murder, there is no double jeopardy bar to a new trial. See *People v. Porter*, 168 Ill. 2d 201, 215, 659 N.E.2d 915, 922 (1995).

Reversed; cause remanded.

DONOVAN, J., concurs.

JUSTICE KUEHN, specially concurring:

I concur in the majority opinion. I write separately to underscore the absence of a strategy that can be deemed sound and to emphasize the importance of making a record when counsel pursues a course that touches upon a decision that only the defendant can make.

Whether or not a lesser-included offense is submitted for decision is a defendant's call. *People v. Brocksmith*, 162 Ill. 2d 224, 229-30, 642 N.E.2d 1230, 1233 (1994). Thus, when the evidence would support the submission of lesser-included offenses for consideration yet an all-or-nothing strategy is pursued, it would seem to be good practice to make a record of the defendant's desire to forego decision on any of the lesser-included offenses. This is particularly so when the charge is first-degree murder and the evidence will support a finding of involuntary manslaughter. The dissipation of criminal culpability, and its attendant punishments, is nowhere greater than when dealing with a homicide committed recklessly, as opposed to being committed with knowledge that death or great bodily harm will ensue from certain acts.

When defense counsel tenders a defense that, if believed, constitutes involuntary manslaughter, counsel fails to provide the kind of representation that the constitution contemplates, if he fails to make involuntary manslaughter a potential outcome, tendered for decision. This is even more the case when the decision is left to a judge, schooled in the law. Presumably, a judge would know that what the defendant claimed to have occurred, as a matter of law, constitutes a crime.

The defendant's version of what happened simply does not absolve him of criminal responsibility. Thus, the tendered defense left the judge with a certain decision, uncluttered by the possibility that the defendant committed involuntary manslaughter, recklessly disregarding a substantial risk of harm by introducing a loaded gun into the affray, a gun that he very well may have discharged accidently, rather than intentionally. The judge had no alternative but to convict the defendant of first-degree murder. On remand, the trier of fact will have the opportunity to find the defendant guilty of the crime that he claims to have committed.

For the reasons stated, I respectfully concur.