913 So.2d 1220 (2005)
Robert SAPP, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-3345.
District Court of Appeal of Florida, Fourth District.
October 19, 2005.
*1221 Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant, Robert Sapp, was tried by jury and convicted of manslaughter for the shooting death of Steven Smith. He appeals from the judgment of conviction and sentence, contending that the trial court erred in denying his motions for judgment of acquittal and a new trial. The state urges us to affirm, arguing that appellant's actions set the stage for the tragedy which occurred and satisfied the standard for manslaughter by culpable negligence.
On the night of the shooting, appellant, Steve Smith, Steve Reddington, and three other friends were socializing at Reddington's apartment. Smith had been staying in the apartment, sleeping on the couch. The group got together at the apartment around 8:00 p.m. Everyone, including appellant, was drinking alcohol and smoking marijuana. Appellant also took two Xanax pills and snorted cocaine. This was his first time trying cocaine.
In his recorded statement to the police, appellant said that he was feeling the effects of the cocaine, which had put him on edge, making his body tingle and feel as if he were on fire. He admitted that he was "very, very messed up." Because he was feeling "antsy," appellant retrieved a gun that had been hidden in the tiles of the kitchen ceiling. He put it in his jacket pocket.
Everyone was sitting around a small table in the living room of the one-bedroom apartment. They were talking about "doing a lick," that is, robbing someone, because everybody was broke. Appellant removed the gun from his jacket pocket, took the ammunition clip out of it, and placed the gun on the table. Reddington did not want the gun around and kept telling appellant to put it away. Instead, appellant started ejecting bullets from the gun by pulling the slide back and placing *1222 the bullets back in the clip. He repeated this about four times. Appellant admitted on videotape that he was waving the gun around, showing off, and talking "trash" while the gun was loaded with hollow point bullets.
For the last time, appellant put the bullets back in the clip and removed the clip from the gun. He sat the clip on the table. When appellant pulled back the slide to make sure there were no bullets remaining in the chamber and released the slide, the gun discharged. A bullet struck Smith, who was seated directly across the table from appellant. The bullet struck Smith in the chest and severed his aorta.
Reddington and appellant carried Smith to a car, and appellant and his girlfriend left to take Smith to the hospital. On the way, they approached a road patrol deputy for help. When the deputy looked at Smith in the passenger seat, he felt that he was already dead. The deputy called for paramedics. While waiting, he and a back-up officer removed Smith from the car and tried to revive him with oxygen and a defibrillator. When the paramedics arrived, they confirmed that Smith was dead.
Appellant told the deputy at the scene that they were shot at as they were heading to their car in Casa Del Monte. He repeated this story later to a homicide detective, adding that he thought the shooting was gang-related. Later that night appellant told yet another version of the incident. He said that the victim had disappeared prior to the shooting, possibly walked down to the Quick Stop, and gotten shot while coming back. The next day, appellant gave the detective a third version of the incident. He said that the victim had walked over to use a pay phone while appellant and his girlfriend waited inside their car in the parking lot. They heard screaming and shortly thereafter some bystanders brought the victim's body to their car. They put the victim in the car and headed for the hospital.
About a week later, appellant spoke again to the detective. This time he told her that the shooting actually occurred in the apartment while he and his friends were seated around a table. He admitted he had consumed a combination of alcohol, cocaine, marijuana, and Xanax. He helped the police retrieve the gun, which he had sold after the shooting. Appellant was not arrested until after the detective received the results of the gun testing.
The state's firearms expert, Jay Mullins, testified that the Walther PPK-3 is a very well-made gun from a very reputable factory that makes good quality firearms. He test-fired the gun twice and determined that it functioned as it was designed. He saw nothing to indicate that it was defective or improperly maintained. He testified that the gun was not capable of being fired just by moving the slide back and forth. In his opinion, the gun would not fire without the trigger being pulled. Mullins conceded on cross-examination that he did not pull the slide of the gun back and forth with live rounds in it to see if the gun would fire, because he did not know for certain whether the gun would go off accidentally and he considered this too dangerous. He described the gun as not being magazine-safe, which means that the gun would fire with no magazine in place if the trigger were pulled with a bullet in the chamber.
Reddington was the only eyewitness to testify. He corroborated appellant's account that the gun went off when appellant was attempting to clear the chamber. At that point, appellant was no longer toying with the firearm. Reddington said he did not see appellant touch the trigger.
*1223 Appellant testified in his own behalf. He acknowledged that he initially lied to the police and explained that he was scared. He admitted, as he did on his videotaped statement, to ingesting drugs and alcohol and to feeling their effect. He acknowledged saying on videotape that he was showing off with the pistol and using the slide to make the bullets jump out. He admitted that his friend kept asking him to put the gun away but that he did not heed his request. Appellant testified that he was unfamiliar with the gun and did not know how it operated. He had never fired the gun before and had no idea the gun would fire without the magazine. When the gun fired, he was pulling the slide back to make sure there were no more bullets in it before handing it over to another person seated at the table. He denied ever putting his hand on the trigger. He theorized that the bullet must have curved to strike Smith because he did not have the gun pointed at him.
The jury returned a verdict of guilty on the charge of manslaughter with a firearm. The trial court denied appellant's renewed motions for judgment of acquittal and denied his motion for a new trial. Appellant was sentenced to serve twenty years in prison, followed by ten years on probation.[1]
Appellant argues on appeal that the court erred in denying his motion for judgment of acquittal because the evidence was not sufficient to support his conviction of manslaughter by culpable negligence.
A motion for judgment of acquittal challenges the legal sufficiency of the evidence. See Boyce v. State, 638 So.2d 98 (Fla. 4th DCA 1994). Denial of a motion for judgment of acquittal is reviewed by the de novo standard. Jones v. State, 790 So.2d 1194, 1196 (Fla. 1st DCA 2001). If there is competent substantial evidence to support the jury's verdict, the trial court's denial of the motion will not be disturbed on appeal. Rogers v. State, 783 So.2d 980, 988 (Fla.2001). In reviewing the trial court's denial of the motion for judgment of acquittal, the appellate court must follow the well settled principle that a defendant, in moving for a judgment of acquittal, admits all facts adduced in evidence, and the court draws every conclusion favorable to the state which is fairly and reasonably inferable from that evidence. See Spinkellink v. State, 313 So.2d 666, 670 (Fla.1975); Lynch v. State, 293 So.2d 44, 45 (Fla.1974); McConnehead v. State, 515 So.2d 1046, 1048 (Fla. 4th DCA 1987).
Because conflicts in the evidence and the credibility of the witnesses have to be resolved by the jury, the granting of a motion for judgment of acquittal cannot be based on evidentiary conflict or witness credibility. See Hitchcock v. State, 413 So.2d 741, 745 (Fla.1982). Any conflicts in the evidence are properly resolved by the jury. See Jent v. State, 408 So.2d 1024 (Fla.1982). A motion for judgment of acquittal should not be granted unless the evidence is such that no view which the jury may lawfully take favorable to the state can be sustained under the law. See Jones v. State, 790 So.2d 1194, 1197 (Fla. 1st DCA 2001) (quoting Lynch, 293 So.2d at 45).
Based on our review of the record, and applying the above principles of law governing motions for judgment of acquittal, we feel compelled to affirm the judgment of conviction.
Manslaughter is defined by statute as:

*1224 The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification....
§ 782.07(1), Fla. Stat. (2003).
Culpable negligence has been defined as:
[C]onduct of a gross and flagrant character, evincing reckless disregard of human life, or of safety of persons exposed to its dangerous effects, or the entire want of care which would raise presumption of conscious indifference to consequences or which shows wantonness or recklessness or grossly careless disregard of safety and welfare of public, or that reckless indifference to rights of others, which is equivalent to an intentional violation of them.
Getsie v. State, 193 So.2d 679 (Fla. 4th DCA 1967) (quoting Miller v. State, 75 So.2d 312 (Fla.1954)).
Appellant argues his conviction for manslaughter should be reversed because the shooting was the result of an accident. He relies upon cases reversing a manslaughter conviction where the gun was accidentally discharged. See In the Interest of J.C.D., 598 So.2d 304 (Fla. 4th DCA 1992); J.A. v. State, 593 So.2d 572 (Fla. 3d DCA 1992) (holding that defendant's careless handling of a loaded rifle, resulting in its accidental discharge and killing of his friend was not culpable negligence sufficient to support a manslaughter conviction); Getsie v. State, 193 So.2d at 679 (reversing manslaughter conviction where husband was "goofing around" with his new handgun and accidentally shot his wife to death while attempting to sit on her lap).
The state counters with cases affirming convictions for manslaughter by culpable negligence where the defendant "set the stage" for a shooting tragedy or recklessly disregarded the safety of others while handling a gun. See Dolan v. State, 85 So.2d 139 (Fla.1956) (affirming manslaughter conviction where defendant fired a shot into a trailer to "show off" during an encounter with his girlfriend's male friend, and while holding pistol in his right hand, shot male friend during struggle for pistol; defendant's actions "set the stage for the tragedy which ultimately and inevitably followed"); Williams v. State, 89 Fla. 475, 104 So. 782 (1925) (affirming manslaughter conviction where shotgun which the defendant was shifting from one arm to the other accidentally discharged, killing an unintended victim); Cunningham v. State, 385 So.2d 721 (Fla. 3d DCA 1980) (finding evidence legally sufficient to support jury verdict of manslaughter where defendant recklessly brought shotgun to a drunken and angry scene and shot decedent during a struggle over the gun); Marasa v. State, 394 So.2d 544 (Fla. 5th DCA 1981) (finding evidence sufficient for conviction of manslaughter where at a drug and alcohol party defendant pointed what he mistakenly believed was an empty gun at victim and pulled the trigger, firing a bullet and killing the victim); McBride v. State, 191 So.2d 70 (Fla. 1st DCA 1966) (upholding manslaughter conviction where the defendant needlessly possessed a deadly weapon which he brandished in a careless and reckless manner while intoxicated).
Each case of manslaughter by culpable negligence is determined upon facts and circumstances peculiar to it. Scarborough v. State, 188 So.2d 877 (Fla. 2d DCA 1966). Urging affirmance of appellant's manslaughter conviction, the state argues that appellant's own testimony and statement to the police show culpable negligence under the manslaughter statute. The state contends that appellant consciously followed a course of conduct showing reckless disregard for human life or the safety of others.
*1225 Viewed in the light most favorable to the state, the evidence adduced at trial established that appellant, after becoming intoxicated on alcohol and multiple drugs, brought a loaded pistol with hollow point bullets into the midst of a small group of people, gathered in a small room, around a small table. "Pumped up" over talk of committing a robbery, he began showing off and waving the weapon around. Over protests of the apartment owner, appellant refused to put the gun away and continued handling it. Several times he pulled the slide of the pistol, ejecting the bullets. He removed the magazine at least twice. He reloaded the magazine and placed it back into the pistol, then removed it again. Appellant did this without knowing how the gun actually operated. He did not know that as he was manually ejecting bullets, another bullet was being placed in the firing chamber. He did not know that the pistol would shoot when the magazine was removed. When he last pulled back the slide, the gun discharged, fatally wounding Steve Smith, who was seated directly across from him. The sum total of appellant's actions demonstrated a high degree of recklessness sufficient to meet the standard for manslaughter by culpable negligence.
Appellant argues that his conduct in accidentally engaging the firing mechanism and fatally shooting his friend, for whom there was "not the slightest animosity," makes his case indistinguishable from J.A. and J.C.D., where manslaughter convictions were reversed.
But, unlike appellant, the defendants in J.A. and J.C.D. were not under the influence of drugs or alcohol. See J.A., 593 So.2d at 572, and J.C.D., 598 So.2d at 304 (noting the absence of influence of drugs or alcohol where the defendant accidentally engaged the trigger). The main factor which distinguishes this case is appellant's conduct in becoming intoxicated by drugs and alcohol before the shooting. Courts have affirmed accidental shooting convictions where defendants handled dangerous weapons while under the influence of alcohol or drugs. See Cunningham, 385 So.2d at 721; McBride, 191 So.2d 70 (holding that even though the defendant may have accidentally shot the decedent, the circumstances surrounding the shooting death of the victim were sufficient to sustain his conviction for manslaughter where the defendant voluntarily became intoxicated and brandished a deadly weapon within the decedent's home in a careless and reckless manner); see also People v. Franklin, 189 Ill.App.3d 425, 136 Ill.Dec. 822, 545 N.E.2d 346 (1989) (affirming involuntary manslaughter conviction where defendant's intoxicated state caused him to trip or stumble while handling a gun and fatally shoot victim). The Illinois court has held that handling a loaded gun while intoxicated is reckless conduct as a matter of law. See People v. Bembroy, 4 Ill.App.3d 522, 281 N.E.2d 389 (1972) (finding defendant's conduct justified conviction for involuntary manslaughter where defendant accidentally shot daughter while handling a loaded pistol in an intoxicated state). In Bembroy, the court said that "even the mere handling of such a weapon in a small apartment while under the influence of alcohol creates an unreasonable and unjustifiable risk to those persons who happen to be present."
In this case, the defendant mishandled a loaded gun while intoxicated, thereby subjecting those in close proximity to an unreasonable risk of death. We believe that a jury could reasonably have found on this evidence that appellant's conduct "evinced reckless disregard of human life or of the safety of persons exposed to its dangerous effects." The jury could reasonably have concluded that appellant's conduct in operating a weapon with no knowledge of its *1226 functioning, in the presence of people gathered near him, while impaired by drugs and alcohol, was such a gross deviation from the standard of care which a reasonable person would exercise that it constituted negligence of "a gross and flagrant character."
We are mindful that the mere consumption of alcohol is not sufficient to support a manslaughter conviction. See Webster v. State, 744 So.2d 1033 (Fla. 1st DCA 1999) (holding that the summary denial of a claim of ineffective assistance of counsel was precluded where petitioner claimed that counsel misadvised him that consumption of alcohol alone was sufficient to convict him of manslaughter by culpable negligence); Walsingham v. State, 272 So.2d 215 (Fla. 2d DCA 1973) (reversing defendant's conviction for manslaughter by culpable negligence where there was no evidence that the defendant handled the gun recklessly in a place where he expected the presence of other people and the evidence that defendant had been drinking alcohol was not conclusive); Grantham v. State, 358 So.2d 878 (Fla. 2d DCA 1978) (holding that where defendant was acquitted of charge of manslaughter by operating a motor vehicle while under the influence of alcohol, her conviction of manslaughter by culpable negligence could not lie where defendant's driving conduct was merely negligent and evidence showed only that she had been drinking).
In the above cases, the evidence showed only a consumption of alcohol, not consumption of alcohol to the point of intoxication. Here, however, appellant testified that he drank alcohol mixed with Xanax pills, smoked marijuana, and snorted cocaine before the shooting incident. By his own admission, he was "very, very messed up." During closing argument, the state compared his conduct to that of an intoxicated person driving a sports car for the first time at ninety miles an hour on a crowded residential street.
Appellant argues that he is entitled to an acquittal because the evidence shows that he did not pull the trigger, and that the gun misfired when he was attempting to clear the chamber. However, the credibility of the defendant and his friend on this point, as well as their ability to accurately observe and recall facts after drinking and doing drugs, was for the jury to decide. The jury was free to believe the testimony of the state's firearms expert that the gun would not have fired without the trigger having been pulled by appellant. In any event, given the circumstances surrounding the gun's discharge, the jury could find that appellant was culpably negligent in causing the death of Steven Smith.
We conclude that on the facts before the jury, the trial court was justified in denying appellant's motion for judgment of acquittal.
Appellant's second point on appeal is that the court fundamentally erred in allowing the state to present testimony concerning the discussion about committing a robbery. We find no error in allowing this evidence, let alone fundamental error. Admission of this evidence was appropriate because it was inextricably intertwined with the acts in issue and showed the general context in which the crime occurred. See Tumulty v. State, 489 So.2d 150, 153 (Fla. 4th DCA 1986); see also Griffin v. State, 639 So.2d 966, 970 (Fla. 1994) (stating that to prove its case, state was entitled to present evidence which paints an accurate picture of the events surrounding the crime charged); Austin v. State, 500 So.2d 262 (Fla. 1st DCA 1986) (holding that collateral crime evidence was so inextricably intertwined with crime charged that an intelligent account of the *1227 criminal episode could not have been given without reference to the other crime).
Here, the evidence suggested that when the talk turned to committing a robbery, appellant became excited. He described his state of mind as being "pumped up" over the idea, and he recalled how he removed the gun from his pocket, placed it on the table, and started fiddling with it. This conduct ultimately led to the shooting death of his friend. Under these facts and circumstances, we find no error in admitting this evidence and denying the motion for a new trial.
For the above reasons, we find that the trial court did not err in denying appellant's motions for judgment of acquittal and a new trial, and affirm the judgment of conviction and sentence.
STONE and FARMER, JJ., concur.
NOTES
[1] Because use of a firearm is not an element of the offense of manslaughter, appellant's manslaughter conviction was reclassified as a first-degree felony. See Minor v. State, 707 So.2d 1184 (Fla. 3d DCA 1998); see also § 75.087(1)(a), Fla. Stat. (2003).