NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180136-U

NO. 4-18-0136

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 1, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| TERRY G. EVANS, | ) | No. 02CF1105 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E Griffith Jr., |
| | ) | Judge Presiding. |

---

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant received reasonable assistance from postconviction counsel at the
continued evidentiary hearing, and the circuit court did not err by denying
defendant's postconviction petition at the third stage of the proceedings.

¶ 2    In March 2008, defendant, Terry G. Evans, filed *pro se* a petition under the Post-
Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2008)), asserting
he was denied his right to due process and a fair trial and effective assistance of counsel. The
Macon County circuit court moved the petition to the second stage of the proceedings and
appointed defendant counsel. In March 2009, defendant's first postconviction counsel filed an
amended postconviction petition. Defendant later waived his statutory right to postconviction
counsel and filed *pro se* an amended postconviction petition in June 2015. In February 2016, the
State filed a motion to dismiss defendant's June 2015 petition, which the court denied after a
May 2016 hearing. In July 2016, the circuit court began the evidentiary hearing on defendant's

June 2015 postconviction petition.  After the State's direct examination of its witness, defendant asked for a continuance and the assistance of postconviction counsel.  Over the State's objections, the court appointed defendant counsel and continued the hearing.  Defendant's new postconviction counsel filed an addendum to defendant's June 2015 postconviction petition.  In February 2018, the court resumed the hearing on defendant's postconviction petition and denied it.

¶ 3        Defendant appeals, asserting (1) postconviction counsel's representation of him at the evidentiary hearing was unreasonable and (2) the circuit court erred by denying defendant's postconviction ineffective assistance of counsel claim based on counsel's failure to ask for a jury instruction on the lesser-included offense of involuntary manslaughter.  We affirm.

¶ 4                            I. BACKGROUND

¶ 5        In September 2002, the State charged defendant with three counts of first degree murder for killing Carla Casey on September 8, 2002, by inflicting broad-surface, blunt-force trauma on her causing her death (1) with the intent to kill or do great bodily harm to her, (2) knowing the act would cause her death, or (3) knowing the act created a strong probability of death or great bodily harm to her.  720 ILCS 5/9-1(a)(1), (2) (West 2000).  In May 2003, defendant filed a motion *in limine*, seeking to prevent the State from presenting evidence at his trial regarding "blood spatter interpretation/analysis."  At the hearing on the motion, the State did not oppose the motion because its blood spatter analysis was still ongoing, but the prosecutor stated the State may file a motion at a later date seeking to present such evidence.  The circuit court granted defendant's motion *in limine* and prohibited the State from "adducing evidence or commenting upon so-called blood spatter analysis."

¶ 6        Defendant's jury trial was over the course of five days, beginning on December

14, 2004. Judge Timothy Steadman presided over the proceedings, and defendant was represented by Greg Mattingley. We provide only a summary of the trial evidence necessary to understand the issues currently on appeal. A more extensive description of the trial evidence is contained in our opinion addressing defendant's direct appeal. See *People v. Evans*, 369 Ill. App. 3d 366, 859 N.E.2d 642 (2006).

¶ 7        On September 8, 2002, before 7 a.m., a man discovered Casey lying in a gravel driveway approximately 15 feet from a white concrete-block commercial building. Casey was naked from her waist down and alive but later died at the hospital. Police found a large bloodstain at the base of the building near where Casey was found and a small amount of blood, which appeared to be handprints or wiping marks, above the large stain on the wall.

¶ 8        Dr. Travis Lee Hindman, a forensic pathologist, testified he performed the autopsy on Casey. Based upon a reasonable degree of medical certainty, Dr. Hindman opined Casey died from "trauma of the brain due to blunt force trauma to the head." Also, contributing to Casey's cause of death was the magnitude of the fracture dislocation of her vertebral column. Dr. Hindman further testified the injuries to Casey's head and face were consistent with being kicked by a shoe. On cross-examination, defendant's counsel asked Dr. Hindman if the pattern-type injuries on Casey's head could have been caused by a tire going over the area. Dr. Hindman testified the pattern was atypical of any tire pattern he had ever seen.

¶ 9        Michael Kyrouac, a crime-scene investigator with the Illinois State Police, testified about the evidence he found inside, outside, and on the underside of defendant's truck. Officer Kyrouac found what appeared to be "swipe marks" on several areas of the truck's undercarriage or areas that appeared to have made contact with something. He did not find any evidence a human body or anything else had passed under the rear portion of the vehicle, only

the front.

¶ 10        David Carter, a crime-scene investigator field supervisor with the Illinois State Police, was presented as an expert in bloodstain-pattern analysis. After the parties questioned Carter about his qualifications, the circuit court ruled Carter competent to testify as an expert witness in that field. Carter testified about the stain on the wall near where Casey was found. Toward the top of the stain, the pattern began to spread, indicating to Carter that Casey was struck at a 90-degree angle by at least three impacts of a downward force motion, such as a stomp. The bloodstains that appeared some distance above the pooled stain indicated human fingers with blood on them were moved down the wall. In Carter's opinion, the stains were consistent with a suspect using his hands to balance himself against the wall as he stomped on the victim's head below.

¶ 11        Defendant presented the testimony of Adam Senalik, an accident reconstructionist. He opined Casey was dragged along the roadway on her left side as defendant grabbed the waistband of her shorts and underwear that were around her lower legs. Casey was also leaning left, which would have caused her body to roll under the truck when the brakes were applied. Carter testified all of the information he reviewed tended to indicate Casey was run over by a tire. The pattern mark on the right side of Casey's face was consistent with the same theory the pattern was caused by a tire. Senalik opined the physical evidence was consistent with defendant's version of the events.

¶ 12        Defendant testified on his own behalf. According to defendant, Casey was riding in defendant's truck. While he was driving, she turned to face him and put her foot on his foot, which was on the accelerator. He looked over at Casey, and she stabbed his hand with an unknown object. Casey then stabbed him again as she tried to grab his wallet. Defendant tried

to knock the weapon out of her hand but missed twice but did strike her in the face. Casey removed her foot from the accelerator. Defendant testified Casey then "ben[t] over and grabbed my wallet and trie[d] to exit the truck." He stated it "didn't look like she tried to jump or nothing like that; it looked like she had slipped." Defendant tried "to grab her before she got away with [his] wallet." He grabbed her shorts "to keep her from going completely out of the vehicle" and her "clothing almost came straight off." Defendant was then lying across the front seat of the truck and was no longer steering the truck. He could feel vibrations as he hung onto her. Defendant tried to hit the brakes, but he missed. He tried again, hit the brake pedal, "and as soon as [he] hit it, it just slammed [him] into the floorboard." Defendant lost his grip on Casey. When defendant hit the brakes, the passenger door swung shut and hit him in the head and arm. He damaged the storage pouch in the passenger door. Defendant testified he felt the rear of his truck hit a big speed bump.

¶ 13       Defendant further testified he got the truck stopped but did not see Casey. Defendant turned his truck around to find her. He saw Casey lying in the gravel in the road. Casey was moaning. Defendant said he "knew [he] had to get her out of the road before somebody came by and seen. So, [he] pulled on her and pulled her over by the building which was pretty close." Defendant reached down toward Casey "to see how bad she was hurt" and got blood all over his hands. He punched the wall because he was angry at himself, wiped the blood from his hands on the wall, jumped in his truck, and took off. When he left, he thought Casey would survive.

¶ 14       At the jury instruction conference, Mattingley tendered the instruction for "aggravated" reckless homicide. See 720 ILCS 5/9-3(a) (West 2002) (referring to the offense as "reckless homicide" and not aggravated reckless homicide). The circuit court explained the

ramifications of a lesser-included offense instruction to defendant and the decision to tender a lesser-included offense was defendant's decision based on the advice given by counsel. The court also asked defendant several questions to ensure defendant's decision was voluntarily made after consulting with his attorney. The prosecutor asked the record to reflect defendant did not want any other lesser-included offense instructions tendered. Mattingley stated he informed defendant there was no factual basis to allow the giving of any other lesser-included offense instructions. In response to a question by the court, defendant indicated Mattingley had discussed that lack of a factual basis for other lesser-included offenses with him. Defendant was also informed of the sentencing range for "aggravated" reckless homicide and the court again asked defendant questions to ensure he understood the sentencing range.

¶ 15    After determining defendant's tender of the "aggravated" reckless homicide instruction was knowing and voluntary, the circuit court allowed the parties to argue whether the court should give the instruction. Mattingley explained the offenses of involuntary manslaughter and reckless homicide were contained in the same statutory section. He noted that, when a vehicle was involved, the offense of reckless homicide was the applicable offense. In Mattingley's opinion, the two offenses were the same except for reckless homicide involved a vehicle. Mattingley pointed to the evidence of defendant's intoxication and contended a jury could conclude defendant was operating his vehicle in a reckless manner. The prosecutor disagreed and argued the evidence did not show defendant was drunk and the evidence presented at trial did not show any reckless conduct by defendant. The prosecutor argued one cannot drive recklessly when they are trying to save someone's life. The circuit court agreed with the prosecutor and denied defendant's request to the give the "aggravated" reckless homicide instruction.

¶ 16      During deliberations, the jury sent a note to the judge posing the following question: "Would the act of concealment of a seriously injured person in itself be an example of an act that would create a strong probability of death or great bodily harm[?]" After conferring with the parties, the judge told the jurors to consider the jury instructions in their entirety. The jury continued to deliberate and later the same day returned with its verdict, finding defendant guilty of first degree murder.

¶ 17      On January 12, 2005, defendant filed a motion for a new trial, alleging (1) the State's evidence was insufficient to prove him guilty beyond a reasonable doubt, (2) the circuit court erred in failing to instruct the jury on the lesser-included offense of "aggravated" reckless homicide, and (3) newly discovered evidence corroborated defendant's claim of innocence. At a joint hearing on February 2, 2005, the court denied defendant's motion for a new trial and sentenced defendant to 35 years' imprisonment for first degree murder.

¶ 18      On appeal, defendant asserted (1) the circuit court erred in admitting the State's expert witness's testimony concerning the bloodstain pattern analysis, (2) the State failed to prove defendant guilty beyond a reasonable doubt, (3) the court erred in refusing to instruct the jury on "aggravated" reckless homicide, (4) the court erred in denying defendant's request for a new trial based upon newly discovered evidence, and (5) his trial counsel was ineffective for failing to tender lesser-included offense instructions. This court affirmed defendant's conviction and sentence. *Evans*, 369 Ill. App. 3d at 384, 859 N.E.2d at 656. In doing so, we declined to address defendant's claim his trial counsel was ineffective for failing to tender an instruction on the lesser-included offense of involuntary manslaughter. *Evans*, 369 Ill. App. 3d at 384, 859 N.E.2d at 655-56.

¶ 19      In March 2008, defendant filed his *pro se* postconviction petition. In April 2008,

the circuit court moved the case to the second stage of the proceedings and appointed defendant counsel. Postconviction counsel filed an amended postconviction petition and a certificate pursuant to Illinois Supreme Court Rule 651 (eff. Dec.1, 1984). The State filed a motion to dismiss, which was never decided. In June 2014, defendant filed a motion to proceed *pro se* and for additional time to file another amended postconviction petition. At an April 2015 hearing, defendant waived his statutory right to postconviction counsel. In June 2015, defendant filed *pro se* his amended postconviction petition and contended he was denied effective assistance of trial counsel based on counsel's failure to do the following: (1) submit a lesser-included offense instruction for involuntary manslaughter, (2) investigate witnesses who could support defendant's testimony Casey attempted to rob him, (3) investigate and present evidence contradicting the State's expert witness on the bloodstain pattern, (4) obtain photographs of defendant's hand taken by police in September 2002, (5) object to the jury instruction on robbery, (6) file a motion to reconsider defendant's sentence, and (7) seek removal of a juror who failed to acknowledge a previous relationship. He further claimed both ineffective assistance of (1) appellate counsel for not raising the issues on direct appeal that he argued in his postconviction petition and (2) postconviction counsel for failing to include all of defendant's claims in the amended petition and obtain affidavits supporting his claims. Defendant also argued he was deprived of both his right to a fair trial based on prosecutorial misconduct and his right to a speedy trial. Defendant attached numerous documents to the June 2015 petition, including (1) a September 2002 police report about an interview of James Steffen, a friend of Casey; (2) an affidavit by William Clutter, a board certified criminal defense investigator, who questioned the State's bloodstain expert's analysis; and (3) defendant's own affidavit. Defendant later struck his claim related to the juror.

¶ 20        In February 2016, the State filed a motion to dismiss defendant's June 2015 postconviction petition.  After a May 31, 2016, hearing, the circuit court denied the State's motion to dismiss.  The court gave the State "leave to file an Answer, if any, within 20 days" and continued the cause for further hearing under the Postconviction Act.  The State did not file an answer.

¶ 21        On July 27, 2016, Judge Steadman commenced the third stage hearing on defendant's June 2015 postconviction petition.  Defendant appeared *pro se* and did not have any additional evidence to present.  The State asked the court to deny defendant's petition since defendant did not present any evidence.  The circuit court noted this court's decision on direct appeal and indicated it needed evidence "at least as to that issue."  The State then presented the testimony of Greg Mattingley, defendant's trial counsel.

¶ 22        Mattingley testified he gave all his clients a written document about decisions which included the decision on lesser-included offenses.  He also had discussions with defendant about lesser-included offenses.  Mattingley testified defendant did not want to submit any lesser-included offense instructions to the jury.  Near the very end of the case during trial, defendant asked if it was too late to consider a lesser-included offense.  The evidence in the case had already been substantially completed at that time, and the defense's theory of the case had been Casey died as a result of the injuries she suffered when she was accidentally struck by defendant's vehicle as she tried to abandon that vehicle after stabbing defendant in the hand and snatching his wallet.  Mattingley told defendant he would look into possible lesser-included offenses.  Mattingley checked the statutes and the committee comments.  He initially looked at involuntary manslaughter.  Mattingley explained the statute for involuntary manslaughter stated that, if the instrumentality which caused the death was a motor vehicle, then reckless homicide

- 9 -

was the proper offense and not involuntary manslaughter. Mattingley believed the offense of reckless homicide fit better than involuntary manslaughter with the evidence he had presented in defendant's defense. Mattingley prepared an "aggravated" reckless homicide instruction and advised defendant of that. Mattingley testified that, if defendant wanted a lesser-included offense before trial, Mattingley would have taken a different approach with many of the witnesses who saw defendant the evening of the offense to get some element of recklessness into the case. Mattingley also explained defendant never claimed to have stomped or kicked Casey, and thus blunt-force trauma by kicking or stomping was never a defense theory for the cause of Casey's death.

¶ 23 As to Casey's alleged history of thefts, Mattingley testified he asked the public defender's investigator to locate and find Steffen, but the investigator was unable to locate Steffen. He also stated he did not recall the names of Becky Williams or Ann Kates appearing in the police reports. Mattingley testified Steffen was the only named individual who said anything about Casey grabbing money off bars and running out.

¶ 24 Mattingley also testified about a possible blood spatter expert. Mattingley explained the State initially disclosed its accident reconstructionist concluded defendant had run Casey down and then she was dragged. That conclusion was based upon skin matters under the front undercarriage of defendant's vehicle. Based on the State's initial position, Mattingley was granted the services of an accident reconstructionist. Defendant's accident reconstructionist concluded certain forces caused the accident to happen as defendant stated and not like the State's accident reconstructionist had concluded. Mattingley did look for a blood splatter expert and found one in Minnesota who was going to charge $2000 per day to testify plus $200 per hour to do an analysis. Mattingley did not hire him and instead filed a motion *in limine* to prevent the

State's blood spatter expert from testifying. Mattingley further testified about the other issues raised in defendant's June 2015 petition.

¶ 25 At the conclusion of Mattingley's testimony on direct examination, defendant stated he was not prepared to question Mattingley because he was waiting on the State to file an answer. Defendant first asked for a continuance and then asked for counsel. The State objected to both requests. The circuit court overruled the State's objections, continued the hearing, and appointed defendant counsel.

¶ 26 In August 2017, defendant's new postconviction counsel filed a motion to make procedural amendments to defendant's June 2015 postconviction petition. The next month, postconviction counsel filed an addendum to defendant's June 2015 amended postconviction petition. In the addendum, postconviction counsel addressed only the ineffective assistance of counsel claim based on counsel's failure to tender an involuntary manslaughter instruction, which this court declined to address on direct appeal. See *Evans*, 369 Ill. App. 3d at 384, 859 N.E.2d at 655-56. Postconviction counsel did not attach any documents to the addendum. On February 22, 2018, postconviction counsel filed a Rule 651(c) certificate.

¶ 27 On February 23, 2018, a new trial judge, Thomas E. Griffith Jr., held the remainder of the third stage hearing. Postconviction counsel cross-examined Mattingley and presented defendant's testimony.

¶ 28 Mattingley testified he did not recall defendant providing him with the names of any witnesses who could support the theory the victim attempted to rob defendant. Mattingley was only aware of the witnesses set forth in the police reports. He did not interview any potential witnesses for the defense related to the victim attempting to rob defendant. If Mattingley had been provided with names of potential witnesses, he would have attempted to

track them down and interview them. According to Mattingley, after defendant's trial had concluded, a possible witness contacted Mattingley, and he had his investigator interview the possible witness. As to the blood spatter expert, Mattingley did not consider obtaining a counter expert. Mattingley explained he had obtained a grant and later circuit court approval to pay for an accident reconstructionist to counter the State's original theory defendant had run the victim down. When he obtained court approval to pay for the accident reconstructionist, the court made it clear he would not be receiving more money. Mattingley also explained he could not find any local blood spatter experts but did talk to one in Minnesota. The Minnesota expert questioned the State's expert's qualifications, and so Mattingley filed a motion *in limine* to bar the State's expert. The State confessed the motion, and thus it was not clear the State would be able to produce a qualified expert at trial.

¶ 29        As to the lesser-included offense instructions, Mattingley testified he had only one and half hours to consider what lesser-included instruction was the most appropriate. Defendant had insisted on an all-or-nothing approach, guilty or not guilty, until almost the close of defendant's evidence. At that time, defendant asked if it was too late to ask for lesser-included offense instructions. Given the amount of time he had, the way he and defendant structured and presented defendant's case, and the focus of the defense theory on the vehicle being the instrumentality of death, Mattingley believed the best option was the lesser-included offense of "aggravated" reckless homicide. If Mattingley had time to "dually consider" the involuntary manslaughter instruction, he might have submitted it. Mattingley further testified involuntary manslaughter might have been a lesser-included offense based on the reckless act of hiding Casey after she was injured. Mattingley also noted he barely had time to redo the instructions to accommodate the lesser-included offense of "aggravated" reckless homicide.

¶ 30    Defendant testified he did provide Mattingley with the names of potential witnesses regarding the robbery theory. Defendant said he got the names from police reports and through people he had out running around for him. According to defendant, Kates and Williams names were in the police reports. Defendant further testified he and Mattingley talked about the lesser-included offense of reckless homicide around the time they got the accident reconstructionist. Mattingley told him based on the reconstructionist conclusion the only possible lesser-included offense was reckless homicide. Defendant denied telling Mattingley he did not want a lesser-included offense instruction. However, defendant did tell Mattingley he wanted a not guilty verdict because he was not guilty. Additionally, defendant testified he only met with Mattingley four times during the time defendant was in the county jail.

¶ 31    At the conclusion of the hearing, the circuit court denied defendant's June 2015 amended postconviction petition. The court noted it found Mattingley's testimony credible. The court noted Mattingley did submit a lesser-included offense instruction and it was based upon the facts before Mattingley at that time. Regarding the robbery theory, the court noted the petition lacked affidavits from those witnesses. The court stated it did not even know if those witnesses existed. As to the blood spatter expert, the court found Mattingley did everything he could to prevent the State's expert's testimony from coming into evidence.

¶ 32    On February 28, 2018, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017). See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the procedure for appeals in postconviction proceedings is in accordance with the rules governing criminal appeals). Thus, we have jurisdiction of defendant's appeal under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 33    II. ANALYSIS

- 13 -

¶ 34       The Postconviction Act provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). It sets forth three stages of proceedings. *Pendleton*, 223 Ill. 2d at 471-72, 861 N.E.2d at 1007. At the first stage, the circuit court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2008). If it finds the petition is frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2008). If the court does not dismiss the petition, it proceeds to the second stage, where, if necessary, the court appoints the defendant counsel. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Postconviction counsel may amend the defendant's petition to ensure his or her contentions are adequately presented. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Also, at the second stage, the State may file a motion to dismiss the defendant's petition or an answer to it. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1008. If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition. *Pendleton*, 223 Ill. 2d at 472-73, 861 N.E.2d at 1008.

¶ 35       At both the second and third stages of the postconviction proceedings, "the *defendant bears the burden* of making a substantial showing of a constitutional violation." (Emphasis added.) *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. When, as in this case, a petition advances to an evidentiary hearing and fact-finding and credibility determinations are involved, this court will not reverse the circuit court's decision unless it is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. A "manifest error" is one that "is clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582

(1997).

¶ 36        Additionally, this court analyzes ineffective assistance of trial counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

¶ 37                A. Reasonable Assistance of Postconviction Counsel

¶ 38        Defendant claims he was denied reasonable assistance of counsel because postconviction counsel did not supplement defendant's ineffective assistance of counsel claims related to the blood spatter expert and potential witnesses who would support the robbery theory in postconviction counsel's addendum to defendant's June 2015 postconviction petition. He also notes postconviction counsel failed to present testimony from a blood spatter expert.

¶ 39        In postconviction proceedings, the right to counsel is wholly statutory, and the Postconviction Act only requires counsel to provide a defendant with a " 'reasonable level of

assistance.' " *People v. Lander*, 215 Ill. 2d 577, 583, 831 N.E.2d 596, 600 (2005) (quoting *People v. Owens*, 139 Ill. 2d 351, 364, 564 N.E.2d 1184, 1189 (1990)).  Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) "imposes specific obligations on postconviction counsel to assure the reasonable level of assistance required by the [Postconviction] Act." *Lander*, 215 Ill. 2d at 584, 831 N.E.2d at 600.  Under that rule, postconviction counsel must (1) consult with the defendant either by mail or in person to ascertain the contentions of deprivation of constitutional rights, (2) examine the record of the circuit court proceedings, and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contentions.  *People v. Perkins*, 229 Ill. 2d 34, 42, 890 N.E.2d 398, 403 (2007).  The defendant bears the burden of demonstrating his attorney failed to comply with the duties mandated in Rule 651(c).  *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23, 955 N.E.2d 1200.  Our supreme court has consistently held remand is required when postconviction counsel failed to complete any one of the above duties, "regardless of whether the claims raised in the petition had merit."  *People v. Suarez*, 224 Ill. 2d 37, 47, 862 N.E.2d 977, 982 (2007).  This court reviews *de novo* whether an attorney complied with Rule 651(c).  *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 15, 43 N.E.3d 1077.

¶ 40        Additionally, postconviction counsel's filing of a Rule 651(c) certificate raises a presumption that counsel provided reasonable assistance under the Postconviction Act—namely, that counsel adequately investigated, amended, and properly presented the defendant's claims. *Jones*, 2011 IL App (1st) 092529, ¶ 23.  In this case, postconviction counsel submitted a compliant certificate, and thus the presumption arises.

¶ 41        This case presents an unusual situation regarding postconviction counsel. Defendant was first appointed postconviction counsel at the very beginning of the second stage

- 16 -

of the postconviction proceedings. While postconviction counsel had leave to file a second-amended postconviction petition, defendant waived his statutory right to counsel and filed *pro se* an amended postconviction petition in June 2015. In February 2016, the State filed a motion to dismiss the June 2015 *pro se* amended postconviction petition, which the circuit court denied. In July 2016, the court commenced the third-stage evidentiary hearing on defendant's June 2015 *pro se* postconviction petition, and defendant did not present any evidence. The State moved to deny the petition based on defendant's failure to present evidence. The circuit court noted this court's decision on direct appeal and stated it believed that, at a minimum, evidence was needed on the issue raised in this court's opinion. See *Evans*, 369 Ill. App. 3d at 384, 859 N.E.2d at 655-56. The State then called Mattingley, defendant's trial counsel. At the conclusion of direct examination, defendant asked for a continuance and the appointment of counsel. The court granted both requests over the State's objections. Defendant's new postconviction counsel filed a motion to make procedural amendments to defendant's June 2015 postconviction petition, which the court granted. In September 2017, defendant's second postconviction counsel filed an addendum to defendant's June 2015 postconviction petition addressing only the issue this court declined to address on direct appeal. In February 2018, the court held the continued evidentiary hearing, and defendant was represented by postconviction counsel at the continued hearing.

¶ 42    Thus, in this case, postconviction counsel began his representation of defendant with cross-examination of the State's witness at the third stage evidentiary hearing and not at the second stage or even at the presentation of defendant's case on the postconviction petition at the third stage. Defendant cites no case law indicating postconviction counsel appointed at that stage in the proceedings had to investigate defendant's postconviction issues. Defendant had knowingly waived his statutory right to postconviction counsel in preparing his June 2015

postconviction petition on which the evidentiary hearing was held. If defendant wanted assistance with the investigation of his claims, then he should not have waived his right to counsel. It was defendant himself who failed to attach affidavits to his June 2015 amended postconviction petition, not postconviction counsel.

¶ 43    Moreover, we emphasize the State had already questioned Mattingley about several arguments defendant raised in his June 2015 petition, which included the blood spatter expert and robbery theory witnesses. Thus, postconviction counsel was already aware of how Mattingley handled the two issues and could use that information in analyzing and presenting defendant's arguments. Moreover, we note postconviction counsel's asking questions about the blood spatter expert and theft witnesses does not necessarily indicate postconviction counsel thought the two claims were worth raising where the State had already raised them on direct examination. Accordingly, we disagree with defendant's assertion postconviction counsel's queries about an issue required postconviction counsel to present additional evidence on that issue.

¶ 44    As to the blood spatter expert, Mattingley's testimony on direct examination thoroughly explained why he did not present a blood spatter expert and his strategy for handling the State's blood spatter expert. Specifically, Mattingley testified the State's initial position based on the State's accident reconstructionist was defendant had run Casey over and then she was dragged by the vehicle. Mattingley's testimony indicated he was fortunate to have obtained funding for an accident reconstructionist and that expert's opinion supported defendant's version of the facts. Mattingley did investigate a blood spatter expert and found one in Minnesota. However, Mattingley lacked the financial resources to hire the blood spatter expert. Mattingley then filed a motion *in limine* to bar the State's blood spatter expert, which was initially granted.

- 18 -

However, at trial, the circuit court decided to allow the State's expert to testify. At that point, Mattingley had already developed his defense based on his accident reconstructionist expert. Thus, Mattingley's testimony on direct examination had shown his performance met an objective standard of competence. In his briefs, defendant does not explain how the presentation of a blood spatter expert by postconviction counsel would have refuted Mattingley's testimony as to why he chose the trial strategy he did and the reasonableness of that strategy. The focus of defendant's appellate arguments is on how a blood spatter expert would have helped his defense at trial, which goes to the prejudice prong of *Strickland* and not the performance prong.

¶ 45        Likewise, with the two potential witnesses to support the robbery theory, Kates and Williams, defendant fails to explain how postconviction counsel's presentation of their testimony would have refuted Mattingley's testimony he did investigate the only known witness to thefts by the victim. Defendant's arguments again focus on how the potential testimony from Kates and Williams would have helped his case at trial, which goes to the prejudice prong of the *Strickland* test. Here, Mattingley testified he examined the police reports and the only witness of Casey's thefts mentioned was Steffen. Mattingley explained he asked the public defender's investigator to locate Steffen but the investigator was unable to find him. Mattingley further testified defendant did not provide him with any other names of witnesses related to the robbery theory. Here, Mattingley's testimony on direct examination did show he investigated potential witnesses to Casey's prior thefts, and thus his performance was not deficient. To refute Mattingley's testimony, postconviction counsel presented defendant's testimony he did tell Mattingley about Kates and Williams. The court found Mattingley credible.

¶ 46        Given the posture of this case, postconviction counsel was addressing the issues the State had already presented evidence on and had shown competent performance by

- 19 -

Mattingley. Defendant has presented no authority postconviction counsel had to present evidence on the prejudice prong of the *Strickland* test when the State had already presented evidence refuting defendant's claims on the performance prong. For the reasons stated, even if postconviction counsel had presented the evidence defendant suggests on appeal, defendant would not have proved ineffective assistance of trial counsel. Accordingly, we find defendant did receive reasonable assistance of postconviction counsel at the continued, third-stage evidentiary hearing.

¶ 47                                    B. Ineffective Assistance of Trial Counsel

¶ 48            Defendant also argues the circuit court erred by not finding trial counsel was ineffective for failing to tender an involuntary manslaughter instruction. The State argues the court's denial of defendant's postconviction petition was not manifest error.

¶ 49            In *People v. Brocksmith*, 162 Ill. 2d 224, 229, 642 N.E.2d 1230, 1232 (1994), our supreme court held a defendant has the exclusive right to decide whether to submit a jury instruction on a lesser-included offense at the conclusion of the evidence. Later, in *People v. Medina*, 221 Ill. 2d 394, 405-06, 851 N.E.2d 1220, 1226 (2006), the supreme court further explained a defendant's decision to tender a lesser-included offense instruction as follows:

> "A defendant is entitled to a lesser-included offense instruction only if the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater. [Citations.] That evidentiary prerequisite must be met before a right to have the jury instructed on a lesser-included offense arises. [Citation.] Therefore, if the defendant chooses to submit a lesser-included offense instruction, he is acknowledging, indeed arguing, that the evidence is such that a rational jury could convict him of the lesser-included

offense, and he is exposing himself to potential criminal liability, which he otherwise might avoid if neither the trial judge nor the prosecutor seeks the pertinent instruction. [Citation.] If, on the other hand, the defendant chooses to forgo the opportunity to tender a lesser-included offense instruction, the defendant might be passing up an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense. [Citation.] In order to make an intelligent and informed decision in that regard, the defendant obviously requires the advice of counsel to aid the defendant in evaluating the evidence and to apprise the defendant of any potential conflicts with the defense strategy pursued to that point in the trial, functions that a trial judge cannot perform for the defendant. As members of this court have observed, the decision whether to tender a lesser-included offense instruction partakes of, and is unavoidably intertwined with, strategic trial calculations, matters within the sphere of trial counsel." (Internal quotation marks omitted.)

Based on the aforementioned considerations, the court held the following:

"when a lesser-included offense instruction is tendered, we believe the trial court should conduct an inquiry of defense counsel, in defendant's presence, to determine whether counsel has advised defendant of the potential penalties associated with the lesser-included offense, and the court should thereafter ask defendant whether he agrees with the tender." *Medina*, 221 Ill. 2d at 409, 851 N.E.2d at 1228.

¶ 50    In this case, the circuit court did conduct an inquiry of Mattingley, defendant's

- 21 -

trial counsel, at defendant's jury instruction conference and did ask defendant questions as well. Mattingley explained on the record why he recommended defendant tender a jury instruction on the lesser-included offense of reckless homicide as opposed to involuntary manslaughter. He stated they were the same offense, except with reckless homicide a vehicle is involved. Since defendant's theory of the case was Casey died from blunt force trauma to the head from defendant's truck running over her, Mattingley advised defendant to tender a reckless homicide instruction. At the postconviction evidentiary hearing, Mattingley testified he gave defendant a document explaining lesser-included offenses and discussed them with him at the beginning of his representation of defendant. Defendant did not want a lesser-included offense of any kind submitted to the jury. Then near the very end of the case, defendant wanted to tender a lesser-included offense instruction. Mattingley had only an hour and half to research defendant's options for a lesser-included offense. Mattingley again explained the defense theory up until that point had been the vehicle was the instrumentality that accidentally caused Casey's injuries. Based on that defense theory, Mattingley recommended a reckless homicide instruction over an involuntary manslaughter instruction.

¶ 51        Defendant contends Mattingley should have recommended an involuntary manslaughter instruction because defendant failed to summon assistance after dragging Casey off the road. However, assuming defendant's abandonment of Casey was reckless, defendant fails to explain how his abandonment was the cause of Casey's death and thus involuntary manslaughter. As defendant notes in his brief, Casey died from fatal head injuries that resulted from contact with a roadway or a person stomping on her head. Defendant does not contend Casey would have survived but for defendant leaving her at the scene and not obtaining help. Defendant also contends stomping a person to death could be considered reckless conduct and

punished under the involuntary manslaughter statue. However, death by stomping was the State's theory of the case, not defendant's. By tendering such an instruction, defendant would have been conceding the State's version of the facts. It appears defendant is arguing Mattingley should have tried for any lesser-included offense because he should have known the jury would be angry with defendant for leaving Casey regardless of how she died and would want to punish him for something. That argument overlooks the fact defendant had informed counsel before trial he did not want to tender a lesser-included instruction and changed his mind at the last minute.

¶ 52    Essentially, defendant wants to reconsider Mattingley's decision of what lesser-included offense instruction to tender with the benefit of hindsight. However, a defendant is entitled to "competent, not perfect, representation [citation], and counsel's performance must be evaluated from counsel's perspective at the time of counsel's representation [citation]." *People v. Whitamore*, 241 Ill. App. 3d 519, 526, 608 N.E.2d 1304, 1310 (1993). Defendant's hindsighted analysis of Mattingley's performance and strategies merely speculates counsel could have acted differently and better, which does not support a finding of ineffective assistance of counsel under *Strickland*. See *Whitamore*, 241 Ill. App. 3d at 526, 608 N.E.2d at 1310.

¶ 53    This case is distinguishable from *People v. Lemke*, 349 Ill. App. 3d 391, 398, 811 N.E.2d 708, 714 (2004), and *People v. Wright*, 111 Ill. 2d 18, 31, 488 N.E.2d 973, 979-80 (1986), where the reviewing courts found the defendants were denied the effective assistance of counsel. In *Lemke*, 349 Ill. App. 3d at 399, 811 N.E.2d at 715, the defendant's trial counsel's adoption of an all-or-nothing approach could only have been based on a misapprehension of the law. *Lemke*, 349 Ill. App. 3d at 399, 811 N.E.2d at 715. The reviewing court explained no reasonable trier of fact could have found defendant possessed a less culpable state of mind than

reckless.  *Lemke*, 349 Ill. App. 3d at 400, 811 N.E.2d at 716.  In *Wright*, 111 Ill. 2d at 30, 488 N.E.2d at 979, the defense counsel misapprehended the defense of intoxication and did not consider whether the defendant's actions could be regarded as reckless.  As such, defense counsel did not examine whether involuntary manslaughter might apply in the defendant's case. *Wright*, 111 Ill. 2d at 30, 488 N.E.2d at 979.  In this case, defendant's version of the facts he accidentally ran over Casey after she fell out of the truck could have supported a not guilty finding.  The fact a jury may have been less likely to find him not guilty because he failed to get Casey aid does not change the fact a not guilty finding was a legal possibility in this case, unlike in *Lemke*.  Moreover, unlike in *Wright*, Mattingley did consider involuntary manslaughter and concluded "aggravated" reckless homicide was the more appropriate lesser-included offense given defendant's theory of the case.

¶ 54          Accordingly, we find the circuit court's conclusion defendant was not denied effective assistance of counsel by Mattingley's failure to advise defendant to tender a lesser-included offense instruction of involuntary manslaughter was not manifestly erroneous.

¶ 55                              III. CONCLUSION

¶ 56          For the reasons stated, we affirm the Macon County circuit court's judgment.

¶ 57          Affirmed.