2023 IL App (1st) 221872-U

No. 1-22-1872

Order filed November 1, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 6376 |
| | ) | |
| GABRIEL GUARDIOLA, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices D.B. Walker and R. Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court properly dismissed defendant's petition for post-conviction relief because it failed to make a substantial showing that defendant was deprived of his constitutional right to the effective assistance of counsel at his trial for first degree murder.

¶ 2    This appeal concerns the second-stage dismissal of defendant Gabriel Guardiola's petition

for post-conviction relief. In his petition, defendant claims that he received ineffective assistance

of counsel at trial because trial counsel failed to introduce evidence that would have shown he

lacked the requisite intent for murder. In particular, he claims that trial counsel should have employed defendant's drug use and addiction, lack of experience with firearms, and the inaccuracy of the gun used, to aid the argument that defendant did not intend to kill the victim, Ricardo Rivera. The trial court found that defendant failed to make a substantial showing of a constitutional violation and defendant now appeals that judgment.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5    On January 30, 2015, a jury found defendant guilty of the first degree murder of Rivera and the trial court sentenced defendant to 55 years in the Illinois Department of Corrections, including a 25-year gun enhancement. On May 31, 2019, this Court affirmed defendant's conviction in an unpublished order. *People v. Guardiola*, 2019 IL App (1st) 151419-U. That order contains a comprehensive recitation of the trial evidence, so we will repeat here only what is necessary for the resolution of this appeal.

¶ 6    In the early morning hours of February 24, 2013, defendant and Rivera were drinking alcohol and smoking marijuana at a strip club. After the two left the club around 4 a.m., and got into defendant's car, an argument ensued over Rivera's conduct in the strip club and the fact that he owed defendant money. This resulted in Rivera threatening to kill defendant. Defendant removed a gun from the driver's side door pocket and placed it on the center armrest before telling Rivera, "You want to kill me? There it is." Rivera picked up the gun and examined it before returning it to the armrest. Defendant then ordered Rivera out of his car.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7     Defendant drove alongside Rivera as the two argued and eventually defendant asked Rivera to get back in the car but could not persuade him to do so. Defendant phoned a mutual friend, Evangelisto Candelario, otherwise known as "Halo," and left a voicemail saying, "He doesn't want to get back in the car. This shit's going to haunt me. I'm going to shoot him." Defendant insisted that this voicemail was not serious and that he was trying to get Candelario's attention.

¶ 8     Defendant continued to argue with Rivera through the window of the car as Rivera walked toward the wall of a liquor store. Defendant exited his car with his gun and walked over to Rivera, at which point the two continued to argue and engaged in a minor scuffle. According to defendant, he then attempted to scare Rivera by firing one round at the nearby brick wall. But defendant was "looking away" when he pulled the trigger and instead shot Rivera in the head, killing him. At trial, defendant insisted that this was an accident.

¶ 9     That morning, after the shooting, defendant visited his girlfriend, traveled to his estranged wife's home where he left his gun in a drawer in the basement, and then met Tina Jefferies, a dancer from the strip club, at a hotel. While defendant was at the hotel, Candelario called him to see if everything was okay. Defendant told him that everything was "cool," and that Rivera had gotten into a fight with two black men. When defendant questioned Candelario's curiosity, Candelario brought up defendant's voicemail stating he was going to shoot Rivera and defendant responded, "Oh, no," and ended the call.

¶ 10    An hour later, defendant called Candelario and said, "They got him. They shot him." Defendant appeared at Rivera's home that afternoon and told police that two black men were responsible for Rivera's death. Defendant told police that he left Rivera outside the strip club after they were kicked out, and that afterwards he spent time with his girlfriend, went to his wife's home,

and met Jefferies at a hotel. Defendant then rode along with police to identify the locations he had visited that night. When defendant and the officers returned to Rivera's home, Candelario entered the squad car and asked the officers to lock the doors. He then played defendant's voicemail from the previous night, and the officers placed defendant under arrest.

¶ 11 Evidence regarding Rivera's death demonstrated that the bullet entered on the right side of the back of his head, just behind his ear at a relatively flat angle. The medical examiner, Dr. Steven Cina, stated that Rivera's black knit cap may have prevented gunpowder from being deposited on his skin. However, the muzzle of the gun had Rivera's DNA inside it, which Dr. Cina believed favored a hard contact or a loose contact range wound—meaning the gun was pressed into Rivera's skin or was very close to it. In addition, autopsy photographs revealed a possible abrasion caused by the gun's muzzle, but Dr. Cina admitted that the photographs were of poor quality. Minor scrapes and abrasions on Rivera's face were consistent with him being pushed into a brick wall. His swollen eye was consistent with the gun shot or blunt force trauma.

¶ 12 Trial counsel argued that defendant lacked the requisite intent for murder and was only guilty of involuntary manslaughter because defendant was intoxicated and did not intend to shoot Rivera. At sentencing, the trial court called defendant's testimony about the shooting "really delusional" and "nothing short of perjury."

¶ 13 On June 24, 2020, through counsel, defendant filed a petition for post-conviction relief, arguing that trial counsel provided ineffective assistance by failing to present additional evidence that showed that defendant was only guilty of involuntary manslaughter. Specifically, defendant asserted that trial counsel failed to introduce evidence that defendant was addicted to PCP and cocaine and had used those drugs the night of the shooting. He also claimed that trial counsel failed

to call a ballistics expert to testify that defendant's gun, a 22 Astra Cub, was small and inaccurate with virtually nonexistent sights and failed to introduce evidence that defendant had never used a gun before. The State filed a motion to dismiss on September 28, 2021, and the trial court dismissed defendant's petition on May 13, 2022.

¶ 14                                                    II. ANALYSIS

¶ 15      The Post-Conviction Hearing Act (the Act) provides a mechanism by which a defendant may raise a collateral attack against his or her conviction based on a claim of actual innocence or where there was a substantial denial of his or her rights under the Constitution of the United States, the State of Illinois, or both. 725 ILCS 5/122-1 *et seq.* The purpose of post-conviction proceedings is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on appeal. *People v. Buffer*, 2019 IL 122327, ¶ 12. Review of the trial court's dismissal of a post-conviction petition is *de novo*, meaning we afford no deference to the trial court's decision. *Buffer*, 2019 IL 122327, ¶ 12; *People v. Randall*, 2016 IL App (1st) 143371, ¶ 44.

¶ 16      The Act sets out a three-stage process for the adjudication of post-conviction petitions. *Buffer*, 2019 IL 122327, ¶ 45. At the first stage the trial court is required to determine whether a petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2); *Buffer*, 2019 IL 122327, ¶ 45. A petition is frivolous or patently without merit when it has no arguable basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. *Id.* An example of an indisputably meritless legal theory is one which is

completely contradicted by the record. *Id.* Fanciful factual allegations include those which are fantastic or delusional. *Id.* at 17.

¶ 17    If the trial court does not dismiss the petition as frivolous or patently without merit, the petition advances to the second stage. *People v. Edwards*, 197 Ill. 2d 239, 245 (2001). Counsel is appointed to represent the defendant, if necessary, and the State is permitted to file responsive pleadings. *Edwards*, 197 Ill. 2d at 245; 725 ILCS 5/122-4; 725 ILCS 5/122-5. At the second stage, the trial court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. The second stage tests the legal sufficiency of the petition, and courts may not engage in fact-finding or address issues of credibility. *People v. Domagala*, 2013 IL 113688, ¶ 35. All well-pleaded facts not positively rebutted by the trial record are construed as true. *People v. Pendleton*, 223 Ill. 2d 458, 473, (2006). Thus, at the second stage, the question is whether the allegations, if proven at a third-stage hearing, would entitle a defendant to relief. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 18    Criminal defendants are guaranteed the right to the effective assistance of counsel. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. 1, § 8; *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To sustain a claim of ineffective assistance, one must show both that defense counsel's performance was deficient, measuring it against an objective standard of competence under prevailing professional norms, and that but for counsel's deficient performance, there was a reasonable probability that the outcome of the case would have been different. *Strickland*, 466 U.S. at 687, 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result. *Id.* at 686. However, judicial scrutiny of counsel's performance must be highly deferential. *Id.* Courts indulge in a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance, and a defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

¶ 19                                            A. Evidence of Intoxication

¶ 20    Defendant first argues that he made a substantial showing of ineffective assistance of counsel because trial counsel failed to introduce evidence of defendant's addiction and use of PCP and cocaine to show a lack of intent to kill.

¶ 21    The State argues that this claim is barred either by *res judicata* or the waiver doctrine. *See People v. Williams*, 209 Ill. 2d 227, 233 (2004) (issues that were raised and decided on direct appeal are barred by the doctrine of *res judicata* and issues that could have been raised, but were not, are considered waived). We disagree, as the claim in defendant's petition is arguably different from his direct appeal, where he argued that he did not receive effective assistance of counsel because trial counsel failed to argue defendant's intoxicated condition to show that defendant's conduct was reckless. *Guardiola*, 2019 IL App (1st) 151419-U, ¶ 60. Furthermore, there was nothing in the trial record during defendant's direct appeal that would have permitted him to raise this argument at that time.

¶ 22    However, even accepting as true the factual allegations that defendant used cocaine and PCP the night of the killing and that he was addicted to those substances, we do not find that trial counsel's failure to introduce such evidence amounts to a substantial showing of ineffective assistance of counsel.

¶ 23   Voluntary intoxication that prevents a defendant from forming the requisite mental state must be so extreme as to suspend all powers of reason. *People v. Kyse*, 220 Ill. App. 3d 971, 974 (1991); *see also People* v. *Smith*, 195 Ill. 2d 179, 195 (2000) (rejecting intoxication defense because defendant's recall in his statements to the police showed he was acutely aware of his surroundings and occurrence witnesses stated defendant had no difficulty speaking or walking). The evidence at trial does not reflect that defendant's intoxication approached this level. Defendant had the presence of mind to consciously conceal his involvement by failing to call 911, deflecting Candelario's concerns after Rivera was already dead, and trying to place the blame for Rivera's murder on others. Furthermore, defendant's testimony about the night of Rivera's murder was lengthy and he was able to recount in detail his time at the strip club, the argument with and killing of Rivera, and where defendant went afterwards. Additional testimony about the sources of or manner of defendant's intoxication would not have made his testimony more credible. The jury would still have been faced with an argument that defendant was too intoxicated to form the intent to commit murder yet still able to remember the events of the entire evening.

¶ 24   Furthermore, introducing evidence of defendant's cocaine and PCP use would not make defendant's version of events more believable given: (1) the physical evidence suggesting the gun was fired from extremely close range, possibly even touching Rivera's head; (2) defendant's voicemail stating that he was going to kill Rivera; and (3) the fact that defendant only propagated the accidental shooting tale after first trying to concoct a story that blamed others. In other words, even if trial counsel had introduced evidence of defendant's drug use, there is no reason to think it would have changed the outcome.

¶ 25    Additionally, given the insignificance of this potential evidence, defendant fails to overcome the presumption that there were valid strategic reasons for avoiding its use. *Strickland*, 466 U.S. at 689.  For example, defendant's success at trial hinged on the jury finding defendant credible and believing his explanation that the shooting was an accident. Trial counsel may have decided that any potential benefit from this evidence was outweighed by the damage to defendant's credibility that would result from informing the jury that defendant was a drug addict.

¶ 26    Finally, the cases relied upon by defendant are inapposite and provide no support for his argument that additional evidence about drug use would have shown he lacked the intent to kill. In *People v. Bembroy*, the issue was whether the defendant was entitled to an involuntary manslaughter instruction, and not whether the defendant's intoxication, in fact, prevented him from forming the intent to kill. *People v. Bembroy*, 4 Ill. App. 3d 522, 525-26 (1972). Additionally, in *Bembroy*, the defendant testified that the shooting of his daughter occurred as he carried a gun across a room and the weapon accidentally discharged. *Id.* at 524. Here, defendant testified that he intended to cock the weapon, intended to pull the trigger, and intended to fire a round in Rivera's direction.

¶ 27    In the same vein, *People v. Franklin* addressed the sufficiency of the evidence to sustain the defendant's involuntary manslaughter conviction. *People v. Franklin*, 189 Ill. App. 3d 425, 429-30 (1989) That case did not address whether the defendant possessed the intent to kill. *Id.*

¶ 28    Lastly, in *People v. Nibbe*, the defendant was convicted of second degree murder after a single punch killed the victim. *People v. Nibbe*, 2016 IL App (4th) 140363, ¶¶ 26-27, 34. That conviction was reversed based on the principle that death is not ordinarily contemplated as a natural consequence of blows from bare fists. *Id*. Furthermore, while defendant claims that *Nibbe*

stands for the proposition that intoxication indicates a less culpable mental state, the court only said that "defendant had been drinking and was in an excitable state due to Robertson's entry." *Id.* ¶ 34.

¶ 29    Altogether, there were valid strategy reasons for not introducing defendant's cocaine and PCP use and, even if trial counsel had introduced it, there was not a reasonable probability that it would have changed the outcome of the trial. Accordingly, defendant has not made a substantial showing of ineffective assistance of counsel based on trial counsel's failure to introduce evidence of defendant's drug use.

¶ 30                              B. Evidence Regarding the Gun

¶ 31    Defendant also argues that he made a substantial showing of ineffective assistance of counsel because trial counsel failed to introduce evidence that the gun defendant used was exceedingly difficult to aim and that defendant had no experience with firearms.

¶ 32    Even if we accept these factual allegations as true, there was a valid strategic reason to forego introducing this testimony. As we noted above, defendant's credibility, and whether the jury believed he had the intent to kill, was the central issue of the case.

¶ 33    Defendant testified that when he fired the gun, he was looking away from Rivera. If trial counsel had introduced this evidence regarding the weapon, it would have only further diminished the credibility of a tale that was already fantastical. How could the jury possibly be expected to reconcile evidence that the weapon was difficult to aim with defendant's testimony that he was not even attempting to aim it when he fired? To introduce this evidence would have been inconsistent with and irrelevant to defendant's explanation of how the shooting occurred. Deference to trial strategy and the fact that this information could not have changed the outcome of the trial lead us

to the conclusion that defendant has not made a substantial showing of ineffective assistance of counsel with respect to this claim.

¶ 34                                          III. CONCLUSION

¶ 35     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 36     Affirmed.